69 U.S. 35 (1864)
2 Wall. 35
MILES
v.
CALDWELL.
Supreme Court of United States.

*38 Mr. Green, in support of the decree.
Mr. Gantt, contra.
Mr. Justice MILLER delivered the opinion of the court.
1. The complainant's first proposition  that his title is good, founded on the prior mortgage, and, being the true legal title, should prevail  contains no element as it is stated, or in the facts which go to make up his title, that calls into action the powers of a court of chancery. If under the proceedings which took place in regard to the mortgage of Gallagher,[] the complainant acquired the legal title to the real estate in question, a court of law would notice that title, and is as much bound to respect it as a court of equity. If he did not really obtain the legal title, but having the possession, was entitled to be treated as a mortgagee in possession, a court of law is bound to protect him in that possession against any title, not paramount to the mortgage under which he held.
*39 We cannot perceive that there is any circumstance connected with the title of complainant, which brings his case within the jurisdiction of a court of equity. Although it is true that in the practice of the English courts, and in those States of the Union where the fictitious action of ejectment is still in use, chancery will interfere where there have been repeated verdicts in favor of the same title to prevent further litigation, it is not true that chancery will interpose in favor of the unsuccessful party in the first trial, upon the sole ground that he has the legal title, and, therefore, ought to have succeeded in the action at law. It would be a novelty that a court of chancery, which in proper cases quiets a title which has been established by several verdicts and judgments at law, should reverse its course of action to quiet a title strictly legal, with no impediment to its assertion in a court of law, where it had been defeated in the only action in which it had been thus set up.
2. The second proposition, in respect of which complainant asks relief,  that the mortgage to Carswell and McClellan is fraudulent, made to hinder creditors, &c.,  is one of the common grounds of equity jurisdiction. To relieve against fraud, and to set aside and cancel fraudulent conveyances, are among the ordinary duties of courts of chancery. Courts of law, however, have concurrent jurisdiction of questions of fraud, when properly raised; and, although they cannot cancel or set aside fraudulent instruments of writing, yet when they are produced in evidence by a party claiming any right under them, their fraudulent character may, under proper circumstances, be shown, and their validity in the particular case contested.
It is a general rule, growing out of the concurrent jurisdiction of the courts of law and chancery over this subject, as well as a variety of others, founded also upon the principle that it is the interest of the public, that there should be some end to litigation, that when a matter has once been heard and determined in one court, it shall not be subject to re-examination in another court between the same parties. The defendant in this suit invokes the benefit of this rule as *40 regards the question of fraud in the mortgage from Ely to Carswell and McClellan, and also as to the fact charged by him that the Gallagher mortgage had been fully satisfied, and was no longer of any force; alleging that both questions were submitted to the jury and decided against complainant in the action of ejectment, the judgment in which is now sought to be enjoined. Of the fact of such submission and finding there can, in this case, be no doubt. Under the instructions of the court, which are in proof in this record, if the jury found either of these issues in favor of Caldwell, the plaintiff was not entitled to a verdict. The plaintiff, however, did get a verdict. It thus appears conclusively that the jury found that there was no fraud in the second mortgage, and that the first had been satisfied.
The complainant, however, seeks to evade the force of the general principle on the ground that the verdict and judgment in actions of ejectment have not that conclusive effect between the parties which they have in other actions, either in courts of law or equity. It must be conceded that such is the general doctrine on the subject, as applicable to cases tried under the common law form of the action of ejectment.
One reason why the verdict cannot be made conclusive in those cases is obviously due to the fictitious character of the action. If a question is tried and determined between John Doe, plaintiff, and A.B., who comes in and is substituted defendant in place of Richard Roe, the casual ejector, it is plain that A.B. cannot plead the verdict and judgment in bar of another suit brought by John Den against Richard Fen, though the demise may be laid from the same lessor, for there is no privity between John Doe and John Den. Hence, technically, an estoppel could not be successfully pleaded so long as a new fictitious plaintiff could be used. It was this difficulty of enforcing at law the estoppel of former verdicts and judgments in ejectment, that induced courts of equity (which, unrestrained by the technicality, could look past the nominal parties to the real ones) to interfere, after a sufficient number of trials had taken place, to determine fairly the validity of the title; and by injunction. *41 directed to the unsuccessful litigant, compel him to cease from harassing his opponent by useless litigation.
There was, perhaps, another reason why the English common law refused to concede to the action of ejectment, which is a personal action, that conclusive effect which it gave to all other actions, namely, the peculiar respect, almost sanctity, which the feudal system attached to the tenure by which real estate was held. So peculiarly sacred was the title to land with our ancestors, that they were not willing that the claim to it should, like all other claims, be settled forever by one trial in an ordinary personal action, but permitted the unsuccessful party to have other opportunity of establishing his title. They, however, did concede to those solemn actions, the writ of right and the writ of assize, the same force as estoppels, which they did to personal actions in other cases.
The first of the above reasons, for the inconclusiveness of the action of ejectment, does not exist in the case before us. That is not the old fictitious action, but is a suit by Thomas Miles against William Caldwell, in which the former complains of the latter "in a plea of trespass and ejectment," and sues for the possession of the land and for damages for its detention. If Caldwell should sue Miles to regain possession after the latter had obtained it under his judgment, there exists no technical reason to prevent Miles from pleading the former judgment, and alleging that it involved the same subject-matter as that for which the second suit was brought.
How far the peculiar sanctity attaching to titles to real estate is still a reason, if it were ever one, for taking judgments in ejectment out of the general rule of conclusiveness, we will consider hereafter. At present we proceed to inquire into a qualification of the rule which is alleged to apply in all cases where the action relied on as an estoppel was in tort, namely, that nothing will be held as concluded by the verdict which was not put directly in issue by the pleadings. If this principle is a sound one, the plea in this case being the general issue of not guilty, no parol proof can *42 be received to show what questions of fact were submitted to the jury under that issue. The case of Standish v. Parker,[*] would seem to countenance this doctrine. But, after a careful examination of the authorities, we do not think that the rule is sustained, nor do we believe it to be founded on sound principle. No reason is perceived why parol proof should be admitted to show what facts were proved, or were put in issue, under the general issue in assumpsit, that would not be equally applicable to the same issue in trespass. Yet it is quite clear, from numerous authorities, that the facts put in issue in assumpsit may be shown in another action by parol.[] The case of Outram v. Moorewood is a leading case on the subject. It is there decided that the action of trespass is conclusive on all questions put expressly in issue by the pleadings. But there is nothing in the opinion touching the introduction of parol proof, for the pleas in that case rendered it unnecessary, the facts in dispute having been set forth in a special plea. In Kitchen v. Campbell,[] the former action was trover for the conversion of goods; and the same plaintiff having afterwards sued in assumpsit for their value, his defeat in the former suit was held to be a bar to his recovery in the second action. Although it is not stated in the case what was the plea in the action of trover, there is no reason to suppose that it was other than not guilty; nor does it seem that any importance was attached to the form of the plea. In Burt v. Sternburgh,[§]  an action of trespass quare clausum fregit,  the plaintiff was allowed to introduce the record of a former recovery between the same parties in an action of trespass, and then to prove by parol that the locus in quo was the same, and that the title relied on by defendant in the action then on trial, was the same title which had been set up and defeated in the first action. In Doty v. Brown,[] the action was replevin for oats, hay, &c. The case *43 turned on the validity of a bill of sale, which was alleged to be fraudulent and void as to creditors. The defendant relied on a judgment of a justice of the peace in a former suit, between the same parties, for the conversion of a part of the goods covered by the same bill of sale. The justice was allowed to testify that he had rendered his judgment in favor of defendant on the ground that the bill of sale was fraudulent as to creditors; and this was held conclusive in the Court of Appeals of New York.
We are of opinion that the prevailing doctrine of the courts at present is, that whenever the form of the issue in the trial relied on as an estoppel is so vague that it does not determine what questions of fact were submitted to the jury under it, it is competent to prove by parol testimony what question or questions of fact were before the jury, and were necessarily passed on by them. In the case under consideration, the record leaves no doubt on that subject.
Reverting now to the question of policy, grounded on the supposed sanctity of land titles as affecting the conclusiveness of judgments in trespass or ejectment, we remark that it is the settled doctrine of this court in reference to all questions affecting the title to real estate, to permit the different States of the Union to settle them each for itself; and when the point involved is one which becomes a rule of property, we follow the decisions of the State courts, whether founded on the statutes of the States or their views of general policy.
As regards the particular question before us, there is a great difference in the different States in the value attached to real estate, and to the title by which it is held, as compared with other species of property. But no doubt is entertained that in all of them the feeling is far removed from that which formerly prevailed in England, or which prevails there even now. While some of our older States still uphold many of the safeguards of the common law, with its complicated system of conveyancing, operating as a strong drag upon the facility and frequency of transfers of real property, our Western people traffic in land as they do in horses *44 or merchandise, and sell a quarter-section of land as readily and as easily as they do a mule or a wagon. The laws of the people correspond with their habits. Deeds of conveyance are, by statute, rendered exceedingly simple and effectual, the main safeguard being a well-digested system of registration. In consonance with this general facility of traffic, it is their policy to prevent those endless litigations concerning titles to lands, which, in other countries, are transmitted from one generation to another. The rapid settlement of a new country requires that a title once fairly determined shall not be again disturbed as between the same parties.
The Revised Statutes of Missouri of 1855,[*] concerning the action of ejectment, say: "A judgment, except of nonsuit, in an action authorized by this act, shall be a bar to any other action between the same parties, or those claiming under them, as to the same subject-matter." We hold this enactment to be binding on the Federal courts as well as those of the State. It is a rule of property. It concerns the stability of titles to land, and it would be highly improper to adopt in the Federal courts a rule tending to increase litigation and unsettle those titles, which is in conflict with the one prescribed by the law-making power of the State. It is a matter which involves something more than a mere rule of practice. It is a question whether a matter, which is conclusive of the title to land in the State courts, shall have the same effect in the Federal courts. It is our opinion that it should.
3. As regards the claim for improvements made in good faith by complainant, the matter is not alluded to by his counsel in this court at all. It is barely mentioned by the counsel for appellant, and no importance seems to have been attached to it either here or in the court below. Such a right must depend wholly upon the statutes of Missouri, and none are cited to us. We are unwilling to enter upon an investigation of the law and the facts both under such circumstances. Besides, without deciding the point, we may *45 remark that upon an examination of the statute of Missouri on that subject, and looking to the policy which dictated it, it does not seem probable that it was intended to give this kind of relief to an unsuccessful defendant in ejectment, while he was still contesting the title of the plaintiff. As to this point, we incline to rule that the bill shall be dismissed without prejudice.
GRIER, J., expressed his concurrence, adding as another reason why the bill should have been dismissed, that even if the mortgage given to Carswell and McClellan had been fraudulent,  which his Honor, after examining the testimony, said it was not,  the complainant, who was not a creditor, had no equity to found his bill.
DECREE REVERSED, with costs; case remanded to the court below, with directions that there the bill be dismissed with costs; the dismissal, however, to be without prejudice to any remedy of the complainant for compensation for improvements on the land made in good faith.
NOTES
[] See supra, p. 36, note.
[*] 2 Pickering, 20.
[] Washington Steam Packing Co. v. Sickles, 24 Howard, 333.
[] 2 Wilson, 304.
[§] 4 Cowen, 559.
[] 4 Comstock, 71.
[*] Page 695, ch. 58, § 33.