CASE No. 867.

## WATSON v. COLUMBIA BRIDGE COMPANY.

A, having purchased all the shares of an incorporated bridge company, hypothecated the stock and mortgaged the property to secure certain notes, and, after that, contracted with a builder to repair the bridge. For a balance due for such repairs, the builder, within the time required by statute, filed the notice and petition necessary to secure a mechanics' lien, and obtained judgment thereon against A in his own name, with a decree for the sale of the bridge to satisfy the lien. The shares of stock were after-

wards sold under a power given by A at the time of their hypothecation, and the purchasers, claiming to be the corporators, resisted payment of the decree.  Upon action brought a year afterwards against the corporation in their corporate name to have this decree enforced against the bridge property—*Held*, that a decree in this action directing its sale for the satisfaction of the lien, was proper.

Before WALLACE, J., Richland, July, 1879.

This case is fully stated in the opinion of the court.

*Messrs. Melton & Clark*, for appellant.

*Mr. J. D. Pope*, contra.

April 26th, 1880.   The opinion of the court was delivered by McGOWAN, A. J.   The Columbia Bridge Company was incorporated, and, up to the close of the war, owned the bridge across the Congaree river at the foot of Gervais street, and known as the "Columbia Bridge."   In the month of February, the bridge was burned, and the stock became almost worthless. In 1872, John L. Neagle purchased all the shares of stock in the company, and then, having full control as the only stockholder, rebuilt the bridge on the old site.

In the spring of 1873, he hypothecated with the receiver of the bank of the state two hundred shares of the stock as collateral security for a loan of $10,000, and in the summer of the same year, he executed a mortgage to L. D. Childs, as trustee, under his own hand and in his individual name, of the entire bridge property, and by the said deed hypothecated nine hundred and twenty-two and one-half shares of the stock to secure a loan from the Carolina National Bank of $30,000. In 1875, Neagle contracted with Mayhew & Co., mechanics, to repair the western abuttment of the bridge, which had been damaged.   The work was completed in August, and within thirty days thereafter Mayhew & Co. filed a notice for the purpose of securing a *mechanics' lien* on the bridge property upon which the work was done.

Within six months after the completion of the work, they filed their petition to enforce the lien against " J. L. Neagle," who did not resist the claim, and February, 1876, Judge Carpenter gave judgment for $424.20, and in May thereafter, Judge Cooke, sitting for Richland county, decreed that the bridge property should be sold in satisfaction of the lien established as stated. Afterwards, the sheriff advertised the property for sale, but for some reason he did not sell it. In November, 1877, the shares of stock pledged to the bank, and Childs, were sold under powers in the transfer, and purchased by Johnson and others, who now claim, by virtue of the ownership of these shares, to be the company, and in the name of the charter title, the "Columbia Bridge Company," resist the sale under the decree aforesaid. This and the judgment have been assigned to John L. Watson, and he, as assignee, brought this action to enforce the decree against the " Columbia Bridge Company," and to have the bridge property sold. The Circuit judge decreed for the plaintiff, and ordered the bridge sold in satisfaction of the lien. From that decree the " Columbia Bridge Company " appeals to this court upon the following grounds :

1. " Because the complaint states no cause of action against the defendant.

2. " Because the plaintiff has no right which can be enforced by this form of action.

3. " Because, if the said John L. Neagle so represented the corporation as that it should have become bound by a judgment rendered in an action in which the said Neagle, in his own person, was defendant, the authority of the latter would certainly be sufficient to bind the corporation by his deed, and the mortgage to Childs, trustee, carried the entire estate of the corporation."

As to this last exception, the proposition stated is correct, but we do not see its application. We do not understand that any one is before the court setting up the mortgage executed to L. D. Childs, trustee. If so, that would present no good ground against the sale of the property, but as to the disposition of the proceeds of sale it would raise a nice question of priorities under the ninth section of the mechanics' act. *Gen. Stat.* 550.

The brief contains nothing on the subject, but it was stated at the bar that the Childs' mortgage was paid in full by the sale of the stock hypothecated. That being the case, the mortgage is discharged and we need not further consider the third exception; the purchaser cannot take the stock, and at the same time set up the mortgage which was paid by the sale of the stock. The plaintiff is assignee of Mayhew & Co., and as such is entitled to all the rights which his assignors had at the time of the assignment and no more. The defendant has the right to ask that the case shall be considered as if the action were brought in the name of Mayhew & Co., and there is no question of counter-claim in the case, we will so consider it. As to the point made by the first exception that " the complaint states no cause of action against the defendants." As we understand it, this is not an original petition to enforce lien under the mechanics' act before cited ; if so, it would be too late as that act declares that " unless the suit for enforcing the lien is commenced within six months, &c., the lien shall be dissolved." The petition required by that act was filed and the lien established and sale of the property ordered. That order was analogous to a decree of foreclosure of a mortgage, and as there was no appeal, all the points now made as to alleged irregularities in the lien must be regarded as *adjudged*, if the cause of action was substantially the same in that action as in this. " The rule in these cases is that a *point once adjudged* by a court of competent jurisdiction, however erroneous the adjudication, may be relied upon as an estoppel in any subsequent suit in the same or any other court at law or in chancery when either parties or the privies of either allege anything inconsistent with it, and this, too, whether the suit is upon the same or a different cause of action." *Bigelow on Estop.*, 45.

It is manifest that the cause of action sued upon in the case against Neagle is substantially the same as stated in this. The court does not see that any obstacle has been interposed to the enforcement of the decree already rendered so as to make an actual case, and there is no propriety in giving judgment in a matter which has been already adjudged. But it does appear that the enforcement of the order of sale in the first case is resisted on the ground that the property of the corporation can-

not be sold under an order rendered in a case against " J. L. Neagle " individually. This may be equivalent to a complaint on the part of the defendants to enjoin the sale of the bridge property under the decree, and in order to end the litigation, we will consider that actual issue as made. That decree may be enforced against the bridge property precisely as if the name of the " Columbia Bridge Company " instead of " J. L. Neagle " had been used as defendant. To establish a mechanics' lien it is not necessary that the contract for the work should be made with the owner of the property. It is sufficient if it is made " with any one rightfully acting for such owner," and where the work is done under such authority, the lien arises not *ex contractu,* but from doing the work. The claim is against the property in the nature of a proceeding *in rem.* After the petition is filed, the court, under the act, takes measures to have the proper parties notified. In this case Neagle was the owner, and was the only person who could be notified at the time the proceeding was instituted.

Neither the hypothecation of the stock nor the mortgage of the property by Neagle divested his title until the stock was sold in 1877. He made the contract and was in possession ; the right party was notified, and the objection is reduced to this, that he should have been sued as the " Columbia Bridge Company." Considering substance and disregarding mere form, the decree of sale in the case of Neagle may be enforced as if the defendant named had been the " Columbia Bridge Company." That is the truth of the matter, and the court can look to the real facts in the case. As Mr. Justice Miller says in the case of *Miles* v. *Caldwell,* 2 *Wall.* 35 : " Courts of equity are not restrained by technicalities but can look past the nominal parties to the real ones." Who are nominal and who are real parties have often been considered in questions of *res adjudicata.* The very point was decided in the case of *Tate* v. *Hunter,* 3 *Strob. Eq.* 136. Tate sued Cobb, sheriff, for money in his hands, and Cobb defended on the ground that the money was applicable to an execution of A. Hunter, and that issue was decided for the sheriff, and afterwards Tate sued Hunter himself, and the court held that the cause of action was the same, and that in the first suit,

Cobb was the technical, but Hunter the real party in interest,. Chancellor Dargan says : " The general rule certainly is that the judgment of a competent court is binding and conclusive upon the parties, and will not be reviewed or reversed by any court possessing jurisdiction.   *     *     *   The subject matter and the issue are precisely the same with 'those in the former trial.   The complaints are the same and the defendant is *substantially* the same.   The only question worthy to be considered is whether this is a case between the same parties as those in the case of Tate *v.* Cobb, sheriff, tried at law.   Upon this point, as already intimated, I have a very decided opinion.   The sheriff, in that case, was merely a nominal party, and the defendant in this case was the *real party in interest.*   The sheriff is the agent of the plaintiff in execution.   As was said in the Dutchess of Kingston's case, the court will take notice of the real parties to the suit.   Such also was the doctrine held in the King's Bench in *Kernerly* v. *Orsse*, 2 *Doug.* 517."

There is another view.   If we look behind the corporate title,. which is a mere name to the real litigations, we find that the defendants are the successors of Neagle and his privies.   Neagle owned all the stock.   He was in possession of the bridge which he had built.   He had the repairs made, and a lien for their value had been established during his ownership.   He owned all the shares, including the very shares which the defendants subsequently purchased at a sale authorized by him, and, therefore, from him as sole owner.   They are in under him as stockholders—as his privies—and are estopped from denying his acts. or a decree founded on them.   " If the subject of the former action is the title to land, a decision thereon would conclude all parties having purchased after judgment from parties bound by that judgment."   *State, ex rel. Brown*, v.   *C. & L. R. R. Co., ante p.* 290.   There is a difference between the stock of the company and its property.   The title of the property is in the corporation and not in the stockholders individually, whose right to control it is through action of the corporators.

The stock may change hands and bring in new members, but they take their interest subject to lien placed upon the property by their predecessors.   The present defendants purchased the stock

of J. L. Neagle, and they cannot repudiate by using the corporate title, a lien placed upon the property through him.

The Circuit decree is affirmed and the appeal dismissed.

WILLARD, C. J., and McIVER, A. J., concurred.