## FLANAGIN *v.* THOMPSON and others.

*(Circuit Court, D. Maryland.* November 7, 1881.)

1. RES ADJUDICATA—ESTOPPEL.

Two mortgages of different properties were at the same time assigned to a bank by a wife as security for one note discounted for her husband. Afterwards, in a proceeding in a state court for the foreclosure of one of the mortgages, the wife disputed the validity of the assignment, and resisted the claim of the bank to receive the money arising from a sale of the mortgaged property. The issue thus raised was decided by the state court in favor of the bank, and the validity of the assignment to it was sustained. Subsequently a proceeding to foreclose the other of the two mortgages was instituted in the federal court, and the wife raised the same objection to the validity of the assignment to the bank. The bank pleaded that the question of the validity of its assignment was *res adjudicata.* *Held,* on the authority of *Campbell* v. *Rankin,* 99 U. S. 263; *Cromwell* v. *County of Sac,* 94 U. S. 351; and *Davis* v. *Brown,* Id. 423, that although the subject-matter of the case in the federal court was not the same as that of the case in the state court, yet the matter put in issue having been the same, and the parties to the controversy the same, that the wife was estopped from again contesting the validity of the assignment upon the same ground as she had set up in the first case.

In Equity.

*William Sheppard Bryan,* for complainant.

*John H. Handy,* for defendants.

MORRIS, D. J. This bill is filed by Margaretta M. Flanagin, wife of William S. Flanagin, a citizen of Pennsylvania, against Hedge Thompson, a citizen of Maryland, and the Easton National Bank of Maryland.

The bill alleges that the defendant Thompson in 1867 executed a mortgage of land in Maryland to secure a bond for the payment of $5,000, which bond and mortgage, by proper assignments, had become the property of the complainant, and that, except the sum of $1,000, no part of the money intended to be secured had been paid, but that the same was long overdue and the mortgage in default. The bill further alleges that the Easton National Bank of Maryland has possession of the bond and mortgage, and sets up a claim to the same by virtue of a pretended assignment, which the complainant charges is null and void. The bill prays that the pretended assignment to the bank may be annulled and set aside, and that the mortgage land may be sold for the payment of the mortgage debt. The bank, by its answer, asserts the validity of the assignment to it, giving the history of the transaction by which it acquired the mortgage, and also, in an amended answer, pleads, in bar of the action, that the same matters put in controversy by the bill had been adjudicated by the court of appeal of Maryland in a cause between the same parties. The mortgagor makes no defence. He admits that the mortgage is in default and that the title of the bank is valid.

The facts disclosed are:

That Mrs. Flanagin, the complainant, in 1872, was the owner of two mortgages on land in Talbot county, Maryland, viz., the one mentioned in this suit which may be called the "Thompson" mortgage, and another which may be called the "Johnson" mortgage. Her husband being pressed for money, she, at his request, assigned in blank both of these mortgages and the bonds they were intended to secure, and gave them to him to be disposed of. Failing in an effort to sell them outright, he applied to the Easton National Bank to loan him $7,000 on them as collateral security. This the bank agreed to do on condition that he should execute a note payable at six months, with two other persons as sureties. He did execute such a note for $7,000, dated December 16, 1872, at six months, payable at a bank in Philadelphia, and over the complainant's signature on each mortgage was written:

"I hereby assign, transfer, and set over the within mortgage and the accompanying bond, with all interest thereon, to the president, directors, and company of the Easton National Bank of Maryland, as collateral security for the payment of a note discounted December 16, 1872, in favor of William S. Flanagin, for $7,000, indorsed by R. D. Johnson and Hedge Thompson."

The mortgage and bonds were then delivered to the bank's attorney, and Flanagin received the proceeds of the discounted note. Before this note became due Flanagin notified the bank that he would not be able to pay it at maturity, and asked for a renewal with the same collaterals and sureties. The bank granted his request and consented to renew, but informed him that as the note had been placed in a Philadelphia bank for collection he must take it up there. This he did, and a few days afterwards went from Philadelphia to Easton, and there received the proceeds of the renewal note. Thereafter renewals were granted to him by the bank, upon his solicitation, every six months until March, 1876, when the note then maturing laid over and remains unpaid.

Of the two mortgages thus assigned to the bank, the Johnson mortgage was a second mortgage, and in 1876 Ridgaway, the holder of the first mortgage, filed his bill on the equity side of the Talbot county court, making Flanagin and his wife, the bank, and other persons having an interest in the land, defendants, and obtained a decree for a sale. A sale was made by a trustee, and after paying the Ridgaway claim there remained a balance in his hands applicable to the payment of the second mortgage. Mrs. Flanagin then claimed that balance, and for the first time disputed the title of the bank, and insisted that, as the mortgages were pledged to secure a particular note of $7,000 of a certain date, described in the written assignment indorsed on the mortgages, and as that particular note had been paid, the bank could not hold the mortgages as security for notes subsequently discounted, to secure which she had never authorized them to be pledged, nor ratified the pledging of them. She claimed that the balance of the fund after paying the first mortgage should be audited to her, and not to the bank. This claim was resisted by the bank, and the issue was raised by proper exceptions to the accounts of the auditor distributing the fund, and was passed upon by the county court. The court's order is to be found in the record filed in this case, and in this langauge:

" The sole question to be determined in this cause is whether the proceeds of sale applicable to the Flanagin mortgage should be awarded to Mrs. Flanagin, or to the Easton National Bank. I am satisfied from the evidence that William S. Flanagin, on the sixteenth of December, 1872, with the consent and by the authority of his wife, Mrs. M. M. Flanagin, deposited said mortgage, and accompanying bond, as collateral security for the payment of a note for $7,000, discounted for him by said bank on that day, and also that the note, in these proceedings mentioned, is a renewal of said note. It is thereupon, this eleventh day of March, 1880, ordered," etc.

The order overrules the exceptions of Mrs. Flanagin to the account awarding the fund to the bank, and directs the trustee to pay the bank. From this order Mrs. Flanagin appealed, and the record having been transmitted to the court of appeals of Maryland and the case having been heard there, the order of the county court was affirmed. The opinion of the court of appeals is in the record, and leaves no room for doubt but that the same question was considered and adjudicated by that learned tribunal. In the opinion of the court it is said:

"The question for decision in this case arises upon the auditor's reports distributing the proceeds of sale of certain real estate, and this contest is over the right to the balance of purchase money in the hands of the trustee after paying first liens. At the hearing all the other objections were waived except the one affecting the right of the Easton bank to claim the fund as against the appellant. The appellant claims as mortgagee of the land. The appellee claims on the ground that appellant's mortgage and the bond which the mortgage secured were assigned to the bank as collateral security for a note of appellant's husband and others, which has not been paid."

After very fully discussing the facts with regard to the renewals of the note, and the law applicable to them, the court holds that the transaction was not a payment of the first note, but was an extension of credit, and simply a renewal of the loan; that the parties never intended to pay the first note, and that it never had been paid.

The court, as a further ground for affirming the judgment below, held that as Mrs. Flanagin had indorsed the bond and mortgage in blank, and given them to her husband to dispose of, she had put it in his power to pledge them for each of the successive renewals; and, as she had actual knowledge that he had obtained the loan from the bank on a pledge of them, and made no objection until the auditor's account was stated, she could not then be heard to object.

The bank now contends that the foregoing judgment is conclusive of the issue raised in the present case.

The complainant contends that the subject-matter of the controversy is not the same; that the evidence adduced is not the same; and that, therefore, the doctrine of estoppel by *res adjudicata* cannot apply.

The question of what requisites are essential to render a **judgment** in one case conclusive in another case, has been of late years very frequently before the supreme court. That court uniformly has held that it was sufficient, if, in the first case, the same question or matter in dispute had been necessarily in issue and decided between the same parties. Thus, in *Campbell* v. *Rankin*, 99 U. S. 263, it is said:

"Whatever had been the opinion of other courts, it has been the doctrine of this court in regard to suits on contracts, ever since the case of *Steam-packet Co.* v. *Sickles*, 24 How. 333, and, in regard to actions affecting real estate, since *Miles* v. *Caldwell*, 2 Wall. 35, that whenever the same question has been in issue and tried and judgment rendered, it is conclusive of the issue so decided in any subsequent suit between the same parties; and also that where, from the nature of the pleadings, it would be left in doubt on what precise issue the verdict or judgment was rendered, it is competent to ascertain this by parol evidence on the second trial. The latest expression of the doctrine is found in *Cromwell* v. *County of Sac*, 94 U. S. 351; *Davis* v. *Brown*, 94 U. S. 423."

In the present case, while it is true that this suit is instituted to foreclose the Thompson mortgage, and that the previous suit was one to foreclose the Johnson mortgage, and therefore the subject-matter of the suits is different, in neither case has there been any controversy over the validity of the mortgage; the sole controversy has been between Mrs. Flanagin and the bank, and as to whether the bank had a right to retain the mortgages as security for the $7,000 now due it. The assignments and transactions on which the bank bases its claim have all affected both mortgages precisely alike. If the first note of $7,000 was in legal effect paid, and if in that case the husband never had authority to pledge the mortgages for the subsequent notes, then the bank had no claim to retain them, nor to receive any part of the proceeds of the mortgaged land in the first case, and has none in this case. The claim of the bank being founded on precisely the same title in both cases, it is evident that the complainant cannot succeed in this case without impeaching the correctness of the decision of the court of appeals, rendered in a case in which the same parties were litigants over the same question.

It is error to suppose that because the two suits concern different subject-matters, the first cannot be conclusive of the second. On the contrary, the supreme court has repeatedly held that notwithstanding the two suits have proceeded upon different causes of action, if in the first the same matter of fact was put in issue between the same parties, and was a necessary ground of recovery, it is a final adjudication of that fact and is an absolute estoppel in the second suit. Thus, in *Cromwell* v. *County of Sac*, on page 352 of the opinion of the court, it is said:

"There is a difference between the effect of a judgment as a bar or estoppel against the prosecution of a second action upon the same claim or demand, and its effect as an estoppel in another action between the same parties upon a different cause of action.   *   *   *   The language, therefore, which is so often used, that a judgment estops, not only as to every ground of recovery or

defence actually presented in the action, but also as to every ground which might have been presented, is strictly accurate, when applied to the demand or claim in controversy. Such demand or claim, having passed into judgment, cannot again be brought into litigation between the parties, in proceedings at law, upon any ground whatever. But where the second action between the same parties is upon a different claim or demand, the judgment in the prior action operates as an estoppel only as to those matters in issue or points controverted, upon the determination of which the finding or verdict was rendered. In all these cases, therefore, where it is sought to apply the estoppel of a judgment, rendered upon one cause of action, to matters arising in a suit upon a different cause of action, the injury must always be as to the point or question actually litigated and determined in the original action, not what might have been thus litigated and determined. Only upon such matters is the judgment conclusive in another action. The difference in the operation of a judgment in the two classes of cases mentioned is seen through all the leading adjudications upon the doctrine of estoppel. Thus, in *Outram* v. *Morewood,* 3 East, 346, the defendants were held estopped from averring title to a mine, in an action of trespass for digging out coal from it, because, in a previous action for a similar trespass, they had set up the same title and it had been determined against them. In commenting upon a decision cited in that case, Lord Ellenborough, in his elaborate opinion, said: 'It is not the recovery, but the matter alleged by the party, and upon which the recovery proceeds, which creates the estoppel. The recovery of itself, in an action of trespass, is only a bar to the future recovery of damages for the same injury ; but the estoppel precludes parties and privies from contending to the contrary of that point or matter of fact, which, having been once distinctly put in issue by them, or by those to whom they are privy in estate or law, has been, on such issue joined, solemnly found against them.' And in *Gardner* v. *Buckbee,* 3 Cow. 120, it was held by the supreme court of New York that a verdict and judgment of the marine court of the city of New York, upon one of two notes, given upon a sale of a vessel, that the sale was fraudulent, the vessel being at the time unseaworthy, were conclusive upon the question of the character of the sale in an action upon the other note, between the same parties, in the court of common pleas."

See, also, the cases cited by Mr. Justice Clifford in his dissenting opinion, page 365.

In the face of these controlling decisions, it is useless to contend that the determination of a question directly involved in one action is not conclusive of that same question in a second suit between the same parties upon a different cause of action. It is, indeed, a qualification of this doctrine that if a particular and distinct defence, which might have been made in the first case, was not made at all, was not put in issue and passed upon, then, in another suit between the same parties, upon a different cause of action, the defendant would not be estopped from raising that new issue. The above-cited cases of *Cromwell* v. *County of Sac,* and *Davis* v. *Brown,* are con-

clusive to this effect. In the latter case the defendants, being sued on two of a batch of ten promissory notes, all of which they had indorsed and transferred to the plaintiff at the same time, defended solely upon the ground that their liability as indorsers had not been fixed by due prosecution against the makers of the notes. This defence was not sustained, and judgment went against them. In a subsequent suit by the same plaintiff on others of the notes, the same defendants rested their defence on a written agreement of the plaintiff, made at the time all of the notes were transferred, that they should not be held liable for any of them. This, the supreme court decided, they had a right to do, and on page 428 of the opinion it is said:

"Where a judgment is offered in evidence in a subsequent action between the same parties upon a different demand, it operates as an estoppel only upon the matter at issue and determined in the original action, and such matter, when not disclosed by the pleadings, must be shown by extrinsic evidence."

But it is plain that no new defence against the claim of the bank has been made, and that no different matter has been put in issue in the present case. The controversy is the same and the issues are the same.

It is, however, urged that the testimony is not the same, and that there is now more evidence for the complainant than in the case which went up to the Maryland court of appeals. Particularly, that there is now evidence tending to show that Mr. Flanagin had no authority from his wife to pledge the mortgages, but only to sell them; and that, although she knew of and ratified his pledging them for the note of December 16, 1872, she did not know of and did not ratify his acts as to any renewals of that note.

The obvious answer to this is: *First*, that as the court of appeals determined that the first note was never paid and that the collaterals pledged for its payment were still bound for it, the want of authority to pledge for the renewals, or the absence of ratification by the wife in respect to such renewals, are now entirely immaterial matters, and that finding of the court of appeals is conclusive of the complainant's whole case; *second*, that the question of the husband's authority over the bonds and mortgages, and his right to pledge them for the renewals, was in fact put in issue and was decided by the court of appeals. The husband did testify in that case as to his authority, and the purpose for which the bonds and mortgages were indorsed in blank and given to him, so that it appears that matter was in

issue, and from the opinion of the court of appeals it clearly appears the court so considered it and passed upon it.

That Mrs. Flanagin may be now advised that she did not in the first case bring forward all the evidence she had to support her side of that issue, of course, cannot now be heard as an objection to the estoppel, even if it were an issue in any way material after the adjudication of the court of appeals on the first point. *Smith* v. *Town of Ontario,* 4 FED. REP. 386.

In my judgment the complainant's bill must be dismissed.

*Hopkins* v. *Lee,* 6 Wheat. 109; *Bank of U. S.* v. *Beverly,* 1 How. 134; *Miles* v. *Caldwell,* 2 Wall. 35; *Beloit* v. *Morgan,* 7 Wall. 619; *Corcoran* v. *Canal Co.* 94 U. S. 744; *Hill* v. *Nat Bank,* 97 U. S. 450; *Campbell* v. *Rankin,* 99 U. S. 261.