FINANCE COMMITTEE OF PENNSYLVANIA v. WARREN.

KENNEDY et al. v. SAME.

(Circuit Court of Appeals, Seventh Circuit. October 4, 1897.)

Nos. 372, 373.

1. EQUITY—COMPENSATION OF MASTER.
   The compensation of a master in chancery should be measured by the amount of work done, the time employed, and the responsibility assumed, having also in view the magnitude of the interest involved. It should be reasonable,—perhaps liberal,—but not exorbitant.

SAME—EXCESSIVE ALLOWANCE—SALE OF RAILROAD.
   A master was appointed to sell a railroad 112 miles long under a mortgage securing $1,380,000 in bonds, and which was subject to a prior mortgage of $300,000. The road was purchased by the bondholders for $250,000. The master had no extraordinary duties to perform, and the entire period of his service was only two months, the actual time employed probably not exceeding 10 days. Held, that an allowance of $4,000 was not justified, and that any sum over $2,500 would be excessive.

3. SAME—APPOINTMENT OF MASTER.
   A master in chancery, being an officer of the court, should be selected and appointed by the court. Any arrangement or agreement by the parties

for selecting the master and fixing his compensation, in advance of his appointment, is improper, in disrespect of the court, and should not be tolerated.

Appeals from the Circuit Court of the United States for the Southern District of Illinois.

These appeals present the question whether the amount allowed the special master for his service in the sale of the railway in question was excessive. The Jacksonville, Louisville & St. Louis Railway Company on May 1, 1890, executed its mortgage or trust deed to the Finance Committee of Pennsylvania, as trustee, upon its railway extending from Jacksonville to near Mt. Vernon, in the state of Illinois, a distance of 112 miles. The trust deed was given to secure bonds to the amount of $1,380,000, payable in the year 1940, with semi-annual interest; and was subject to a prior mortgage of $300,000. Upon default in payment of interest and taxes a bill was filed on the 7th day of December, 1893, for a foreclosure of the trust deed and a sale of the property, which resulted in a decree, entered on the 23d day of April, 1896, finding the amount of unpaid interest to be $172,500, and directing a sale of the railway (subject to the prior mortgage, and to an issue of receiver's certificates amounting to $115,000), upon public notice, providing that no bid for less than $250,000 should be accepted, and appointing Phillip Barton Warren, the appellee, special master to conduct the sale, with the usual powers of masters in such cases. On June 10, 1896, the property was sold by the special master to Robert F. Kennedy and Joseph H. Dunn, a committee representing and purchasing in behalf of the bondholders, and for the sum of $250,000. The sale was confirmed, and the special master, by direction of the court, executed and delivered a deed to the purchasers. On the 27th of August, 1896, the special master, by petition, applied to the court to determine and assess the amount of compensation due him for his service, claiming the sum of $5,000 therefor. Upon that petition evidence was taken with respect to the service performed, which service consisted in drafting and causing to be published the notice of sale, attending the sale, making report to the court, drawing and executing a deed to the purchaser, and receiving from the parties the bonds, to be stamped by him with the appropriate proportion of the bid applicable to those bonds. Evidence was taken with respect to the allowances to masters upon sales of railway in the Southern district of Illinois and in other districts, and also to the effect that prior to the decree there was some friction between counsel for the respective parties with regard to the appointment of special master and to his compensation; and it was asserted upon the one side and denied upon the other that there was agreement between counsel that, in case of the appointment of Mr. Warren, the appellee, as special master, his compensation should be fixed at the sum of $1,500. The court allowed the master for his service the sum of $4,000, from which decree the Finance Committee of Pennsylvania, the trustee, and Kennedy and Dunn, the purchasers under authority conferred by the decree of foreclosure, appealed.

Henry A. Gardner, for appellants.
Buford Wilson, for appellee.

Before WOODS, JENKINS, and SHOWALTER, Circuit Judges.

JENKINS, Circuit Judge, after stating the facts, delivered the opinion of the court.

The eighty-second rule in equity prescribed by the supreme court provides that "the compensation to be allowed to every master in chancery for his services in any particular case shall be fixed by the circuit court in its discretion, having regard to all the circumstances thereof." Our review of the decree complained of is therefore necessarily limited to the question whether the discretion of the court has been improvidently exercised. A master in chancery occupies,

it is true, a position of responsibility and of trust. The court looks to him to execute its decree thoroughly, accurately, and in full response to the confidence extended to him. His compensation should be measured accordingly. He should be remunerated for the actual work done, and the time employed, and the responsibility assumed. The amount of compensation should be fixed with due regard to the magnitude of the interests involved, and to the responsibility of the position. The amount of such compensation, while it should be reasonable, and perhaps liberal, should not be exorbitant. Possibly, much ground for complaint would be avoided if the amount of compensation could be determined by some fixed standard. Yet so various and dissimilar are the services performed, and the character and extent of the responsibilities assumed, that it might work injustice to deal with such matters by any ironclad rule. The service here would seem not to have been arduous. It was all performed within a period of two months, and the time actually employed in it could not well have exceeded 10 days. The service consisted in the preparation and publication of notices of sale, attendance at the sale, the execution of a deed, the ascertainment of the proportionate amount of the bid applicable to each outstanding bond, and the stamping of such amount upon each bond. The railway in question was a small affair, being only 112 miles in length, and manifestly unremunerative. The road was bonded for about $14,000 a mile, and could not pay interest upon its bonded debt. The court was obliged to issue receiver's certificates to the amount of $115,000 to keep the road in proper repair, and to provide for outstanding liabilities for recent operation of the road, chargeable upon the corpus of the property in priority to the mortgage. It was understood to be and was necessarily the case that the bondholders must, for their own protection, buy in the road; and, manifestly, their committee would be, as in fact it was, the only bidder at the sale. The responsibility assumed by the master was, therefore, not great. The evidence offered in respect to the value of the service dealt largely with the amount of allowances to masters upon the sale of railways in that and other federal districts. The peculiar circumstances surrounding those cases are not disclosed, and, unless there were some extraordinary conditions existing of which we are not informed, we fear that some of these allowances were excessive. While we cannot agree with the ruling in Middleton v. Telegraph Co., 32 Fed. 524, that compensation in such cases should be measured by the standard of judicial salaries,—which are not infrequently meager,—we are also of opinion that the rule seemingly approved in Railway Co. v. Heath, 10 Blatchf. 214, Fed. Cas. No. 4,516, to treat stocks or bonds passing through the hands of the master as so much money committed to his keeping, and allowing him a percentage thereon, in analogy to the commission allowed to the clerk of the court or to an executor or administrator for receiving and paying out money, or to a broker for the purchase and sale of stocks or bonds, might, in many instances, work out an exorbitant compensation. We are reluctant to disturb a decree of this character, when much must be largely rested in the discretion of the court below. We cannot, however, but regard

the amount allowed as excessive in view of the circumstances surrounding this case.

In a case in the Eastern district of Wisconsin, involving the sale of the street-railway system of the city of Milwaukee, with more lines of railway than the one in question, the road was sold for $5,000,000. The master dealt with bonds to the amount of nearly $9,000,000, and with a considerable amount of money. He was obliged to go to New York with respect to the stamping upon each of these bonds the proportionate amount of the bid; and other services, not required in the case here, were performed by him. There the sum of $3,500 was allowed by the court. In the case of the sale of the Louisville, New Albany & Chicago Railroad, in the district of Indiana, the road was 512 miles in extent, was sold for $3,000,000, and the master dealt with bonds to the amount of over $8,000,000, and was likewise required to go to the city of New York in the discharge of his duties. In that case the like sum of $3,500 was allowed. In both these cases we think the amount was fair and liberal, but not excessive. The case in hand was not nearly so important as the cases referred to; the responsibility was not nearly so great. We think that an allowance of $2,500 for the services rendered would have been a full and liberal compensation, and possibly too much. We are of opinion that any greater sum must be deemed excessive.

There was evidence pro and con with reference to an alleged agreement between counsel representing one of the complainants below and counsel for the appellants here with respect to the person who should be appointed master, and the compensation which should be paid him. We have not considered that evidence in respect to the amount of compensation, and we refer to it only to say that courts ought not to regard any such arrangement between counsel, made in advance of the appointment of the master. It is not to be tolerated that parties to a suit may hawk such employment about the street, and award it to the lowest bidder. The master is an officer of the court. He is appointed by and should be selected by the court, and not by the parties. The office is one of dignity and responsibility, and, while it is proper that the master should receive from the parties in interest all proper suggestions with reference to the manner in which he should comply with his duty, it still remains that he must determine for himself how his duty should be performed, and he owes it to the court that its orders should be carried out strictly and impartially, and not in favor of one interest against another. He occupies a quasi judicial position. He is not the servant of, nor bound to obey the orders of, any party to the suit; and he should not become a mere dummy, to be used by interested parties to effect their purposes. When his services have been performed, it would, of course, be agreeable to the court, and relieve it of responsibility, if the parties interested could agree with the master upon an amount of compensation satisfactory to both. But in advance of the appointment such agreements are improper, and in disrespect of the court.

The decree will be reversed, and the cause remanded for further proceedings in the court below in conformity with this opinion.