## ÆTNA CASUALTY & SURETY CO. v. AMERICAN SURETY CO. OF NEW YORK et al.

### No. 3424.

Circuit Court of Appeals, Fourth Circuit.

April 4, 1933.

Joseph R. Curl, of Wheeling, W. Va. (John C. Palmer, Jr., and J. Campbell Palmer, 3d, both of Wheeling, W. Va., on the brief), for Ætna Casualty & Surety Co.

Ernest K. James, of Charleston, W. Va. (Campbell & McClintic, of Charleston, W. Va., on the brief), for American Surety Co.

Russell B. Goodwin, of Wheeling, W. Va. (Kent B. Hall and Charles F. Paul, Jr., both of Wheeling, W. Va., on the brief), for Magnolia Fuel & Supply Co. and Ohio Valley Sand Co.

Before PARKER, NORTHCOTT, and SOPER, Circuit Judges.

SOPER, Circuit Judge.

This suit in equity was instituted by Ætna Casualty & Surety Company, a corporation, against Coss & Otto, copartners engaged in the business of road construction, the state road commission of West Virginia, a corporation, and divers other parties to whom Coss & Otto had assigned certain sums of money to be paid out of any funds that might become due them by the state road commission under a contract for the construction of a highway, known as the river road, in Marshall county in West Virginia. The firm had entered into a contract with the commission under date of June 14, 1927, for the construction of a portion of the highway; and the surety company on July 11, 1927, had executed a bond in the sum of $35,204, in which it guaranteed that the firm would faithfully perform the contract and pay all debts incurred for labor and material furnished in and about the construction of the road. In the application to the surety company for the bond, and as part of the contract between them, Coss & Otto assigned to the company all deferred payments and retained percentages arising out of the contract, and any moneys that might be due them thereunder, if at any time they should fail to pay any bills incurred in the work. The funds assigned were to be held by the surety and credited by

it upon any loss it might sustain under any bond of suretyship which it had executed or might thereafter execute for the firm. The contractors finished their work under the contract prior to June 1, 1929, but they did not fully pay the persons who had furnished material for the job, and they also defaulted in the performance of the other road building contracts, upon which the Ætna Company was also surety, so that it became liable to pay substantial sums in their behalf. Certain of the defendants holding the assignments above described had furnished material to the river road, while others had furnished material on other projects with which the surety company had no connection.

After the completion of the work, a controversy arose between Coss & Otto and the state road commission as to the liability of the commission to pay them additional sums for excavation and piling in connection with the construction of the road; and by an agreement of February 17, 1930, the matter was submitted to the Honorable J. Harold Brennan, judge of the circuit court of Ohio county, W. Va., for arbitration. He held that the state road commission was indebted to the contractors for this work in the sum of $20,-660.25. No part of this sum had been paid to the contractors when the bill of complaint in this case was filed, and the Ætna Company, admitting that the money should be first used to satisfy the claims of all persons who had furnished labor or materials in the construction of the road, claimed that the surplus should be paid to it by virtue of the assignment which it held. It therefore prayed that the fund be so applied by the state road commission. The state road commission filed no answer and as to it the bill was taken pro confesso. The answers of Coss & Otto and of the defendants holding assignments made the contention that these assignments took priority over that of the surety company, even if the assignees furnished no material to this particular work; but it was decided otherwise by this court in Lacy v. Maryland Casualty Co., 32 F.(2d) 48, 49, and the point is not raised on this appeal.

The American Surety Company of New York, a corporation, filed a bill of intervention in the case on January 23, 1931, on the ground that it had an interest in the fund in the hands of the state road commission by reason of the facts which are now to be set out. At or about the time of the execution of the road contract above described, the county court of Marshall county, W. Va., also entered into a contract with Coss & Otto for the improvement of an addition-

al portion of the river road which, together with that covered by the state contract, constituted one continuous section of the highway. The American Surety Company on July 9, 1927, furnished a bond in the sum of $25,000, whereby it guaranteed to the county court of Marshall county the faithful performance of the county contract; and the application for this bond, as in the case of the Ætna Company, contained an assignment by the contractors of deferred payments on any moneys that might be due and payable to them at the time of a default, or that might thereafter become due and payable; and provided that such moneys should be credited upon any claim that might be made upon the surety by reason of its suretyship. The contractors also failed to pay all of the bills for materials furnished under the county contract, and the American Company consequently became liable therefor.

Although there were separate contracts for the two portions of the road, the prior transactions between the parties were such that the work was done as a single enterprise. In the early part of 1927, a bond issue in the sum of $50,000 had been put out by Marshall county, W. Va., for the purpose of using the proceeds to improve a section of the river road; and while the funds were in its possession on May 12, 1927, it entered into an agreement with the state road commission for the joint improvement of the road extending in all for a distance of 6.4 miles. Under the terms of the agreement, the entire construction was to be committed to the supervision of the engineers of the state road commission, and it was designated by the commission as "Road Project 3087-A." The county was to use $2,500 of the fund in defraying other costs, and the balance of $47,-500 towards the improvement of the road, while the state commission was to be responsible for the cost of the residue. Bids were solicited and received on the project as a whole, and a proposal of Coss & Otto to do the entire work was found to be the lowest responsible bid and the work was awarded to them. But at this juncture, the parties were advised by the Attorney General of the state that the county authorities could not lawfully turn over their funds to the state road commission, and accordingly the commission and the county court agreed that the project should be divided between them and that separate contracts with the contractors should be executed. Certain numbered stations or sections of the road were assigned to each of the contracts. The contractors had bid on the basis of unit prices, the quantity of units be-

ing estimated. Since the county court had only $47,500 to spend, its liability under its contract was limited to that sum, and the three parties agreed that in the event that the cost of the construction of the county's part of the project should exceed the sum of $47,500, the state road commission would pay the excess. By this arrangement, the terms of the original agreement between the state and county authorities were substantially carried into effect.

During the progress of the work, monthly current estimates on both portions of the project were prepared by the engineers of the road commission, and those which related to the county contract were regularly paid by the county court. When the entire work was done, a final estimate was prepared covering the work done under the county portion of the project; but this estimate exceeded the sum of $47,500, and so the engineer for the road commission caused a number of the items in this estimate to be transferred to the final estimate to be paid by the road commission. The county court of Marshall county paid its final estimate, as amended, which was accepted in full satisfaction of its liability by the contractors and the road commission.

The American Company, as intervener, claimed an interest in the fund found to be due from the state commission to the contractors on the ground that the allowances made by the arbitrator for excavation and for piling, although stated in lump sums in the award, actually covered not only work done upon the state end, but also work done upon the county end of the road. The total amount allowed by the arbitrator was $20,660.25, of which $19,010.25 was allowed for excavation and $1,650 for piling. The intervener alleged that all of this piling was done under the county contract, while the amount of the excavation thereunder at the unit price amounted to $6,902.55; so that of the total sum allowed by the arbitrator, $8,552.55 represented work under the county contract and $12,-107.70 represented work under the state contract.

These facts were charged in the bill of intervention. There was no answer to the bill by the state road commission, as to which it was taken pro confesso; and no denial of the allegations by the other defendants with the exception of the Ætna Company. By its answer, the Ætna Company admitted that the two governmental bodies entered into separate contracts with the contractors for separate portions of the road, but denied that there was an agreement between the state and county authorities to divide the work, or that the state road commission agreed to pay all of the costs in excess of $47,500, or that the commission supervised the performance of the work under both contracts, or that of the sum allowed by the arbitrator, $8,552.55 was properly attributable to work done under the county contract.

The case was referred to a special master, who took testimony and found the disputed questions of fact in favor of the American Company and the findings were confirmed by the District Judge. The decree, which adopted the master's report, provided that of the sum due by the state road commission to Coss & Otto, $8,552.52 was due for work performed under the county contract, and $12,107.70 for work done under the state contract; that the assignments made by the contractors to the two surety companies were valid and binding assignments of the moneys in the hands of the state road commission which had been earned under the respective contracts, subject only to the lien of the attorneys, who represented the contractors in the arbitration proceedings, for a fee for services rendered; that each surety company should pay out of the sum coming to it all unpaid bills for materials furnished in the construction of that portion of the road covered by its bond; that the contractors were indebted to the Ætna Company in a sum greatly in excess of $12,107.70, and that it was entitled to retain such part thereof as should remain after paying a proportionate part of the attorneys' fee and the bills of material men remaining due under the state contract; that the American Company was entitled to receive so much of the fund as would enable it to pay the unpaid bills under county contracts. The state road commission was ordered to pay to the lawyers who tried the case for the contractors before the arbitrator, and to the two surety companies, the respective sums of money named in the decree, and the surety companies were directed to distribute the money received by them in accordance with its terms. The balance of the fund, amounting to $1,248.33, was ordered to be divided in proportion to their respective claims among three assignees of Coss & Otto, who had not furnished labor or material under either contract.

The principal question on this appeal is whether the American Company is entitled to the share of the fund fixed by the decree of the District Court, or whether this sum should go to the Ætna Company under its assignment. The Ætna Company contends that the award of the arbitrator shows conclusively

on its face that the state road commission was indebted to Coss & Otto in the sum of $20,660.25 for work done under the state contract alone, and that therefore the American Company has no interest in the fund involved in this case and no just cause to intervene. It is said that none of the evidence taken by the special master which tends to show that a part of the fund was earned under the county contract was admissible, because the decision of an arbitrator is governed by the rule of res adjudicata and may not be collaterally attacked either by the parties, or by their assignees in privity with them; and that parol evidence may not be introduced to alter or contradict an award, or to show the grounds thereof. Our attention is called to the terms of the arbitration agreement which recited that differences had arisen between the parties as to the amount due the contractors by the commission "for work done and materials furnished in the construction of State Road Project 3087-A, Marshall County under contract dated June 14, 1927," the date of the state contract, and it is contended that as the matters in issue in any action at law are determined by the pleadings and judgment, so by analogy the thing decided in an arbitration proceeding is shown by the arbitration agreement.

It is significant that neither party to the arbitration joins in this objection; but aside from this consideration, we think that the circumstances justify an examination of the proceedings before the arbitrator, and the admission of evidence in order to determine the scope of his inquiry. When the parties to an arbitration do not confine themselves to the restrictions of the agreement, but by mutual consent present matters outside of the submission to an arbitrator for decision and they are fully considered and decided without objection, neither party can object that the award exceeded the submission. Matter of Priore v. Schermerhorn, 237 N. Y. 16, 142 N. E. 337; Woods v. Page, 37 Vt. 252. Moreover, when the record leaves the matter in doubt, parol evidence not inconsistent with the award may be introduced to show what was litigated before the arbitrator and what was determined by his decision. Osborne v. Colvert, 86 N. C. 170; Evans v. Clapp, 123 Mass. 165, 25 Am. Rep. 52; Miles v. Caldwell, 2 Wall. 35, 17 L. Ed. 755; Washington, A. & G. S. P. Co. v. Sickles, 24 How. 333, 16 L. Ed. 650; Russell v. Place, 94 U. S. 606, 24 L. Ed. 214.

When the arbitration agreement and the proceedings before the arbitrator are examined in the light of these rules, it appears that the arbitration agreement was not clearly limited to the operations of the contractor under the state contract, and also that the parties submitted to the arbitrator work done by the contractor under both state and county contracts. The contract mentioned in the arbitration agreement was the state contract, but the project referred to was "State Road Project 3087-A," the designation given by the state commission to the whole road under consideration. Furthermore, the exhibits filed with the statement of claim of Coss & Otto show that the work for which they were claiming compensation included work done on that portion of the road covered by the contract with the county court. These exhibits included estimates of the engineers of completed portions of the work upon which payments to the contractor were based, some of which were made by the state highway commission and some by the county court; and one of the exhibits which related particularly to the question of excavation, included a large number of stations within the county portion of the work. The county contract itself was filed with the statement of claim made by the contractors.

These circumstances, to say the least, raise a doubt as to whether the matter submitted to the arbitrator was confined to the work done by the contractors under the state contract and justified the taking of evidence to make the matter clear; and when the evidence which was taken by the arbitrator is referred to, it becomes certain that he included all of the operations under both contracts in order to determine the sum of money which was due to the contractors by the state commission. The arbitrator had no occasion to make separate findings of the amounts due to the contractors on the two portions of the work, because, as we have seen, the agreement between the state road commission and the county court limited the obligation of the latter to the payment of $47,500 on account of the cost of the road, and made the former liable for any excess. The county court had already paid the entire sum for which it was liable before the arbitration proceedings took place, so that it was a matter of indifference to the state road commission on what portion of the road the work was done for which the contractors were making an additional claim.

Therefore, there was no error in the conclusion that the arbitration was designed to cover the entire project; and an examination of the evidence before the arbitrator and before the special master convinces us, as it did the District Judge, that $8,552.55 of the total allowance was payable for work done

under the county contract. We agree also with the conclusion that the state road commission was liable for this work by reason of its agreement with the county court to pay all of the costs of the county work in excess of the sum of $47,500. Although a formal written contract to this effect was not executed by the state road commission as a corporation, still the understanding of the parties was proved through the oral statements and the written correspondence of representatives of the commission; and if any defect existed in the execution of the agreement, or in the authority of the agents of the commission, it was cured by the ratification of the commission, signified by the acts of its agents in carrying the agreement into effect. As we have seen, the commission does not deny its liability. It follows that the American Company has established its right to intervene in this case and to secure the relief which it prayed. It is well established that when he who seeks to intervene has a direct and immediate interest in a res, the subject of the suit, and cannot otherwise protect his interest, the right of intervention is absolute and a denial is the subject of an appeal. United States v. California Co-op. Canneries, 279 U. S. 553, 556, 49 S. Ct. 423, 73 L. Ed. 838; Radford Iron Co. v. Appalachian Electric Power Co. (C. C. A.) 62 F.(2d) 940, decided January 10, 1933.

▮ Two of the assignees of Coss & Otto, to wit, Magnolia Fuel & Supply Company and Ohio Valley Sand Company, which supplied material to both portions of the work, have appealed from the decree of the District Court because no allowance of interest was made to them on the amounts found to be due. It was determined by the decree that there was due and owing the Magnolia Fuel & Supply Company the principal sum of $1,800, to be paid to the extent of $1,105.35 by the Ætna Company and to the extent of $694.65 by the American Company. Coss & Otto gave their note for $1,800 for this debt and paid interest on it up to January 6, 1930. The decree should have included interest from that date. The Ohio Valley Sand Company was allowed the principal sum of $5,356.88 by the decree, to be paid, $268.88 by the Ætna Company and $4,728 by the American Company. At one time the sand company held a note of Coss & Otto for $5,200 of this amount, but this was taken up when the contractors gave the company an assignment of a portion of the funds in the hands of the road commission on October 28, 1929. The evidence indicates that interest was paid to February 28, 1930, and it should have been included in the decree from that date.

It was determined by the decree that the Ætna Company was entitled to a lien on $12,-107.70 and the American Company to a lien on $8,552.55 of the fund of $20,660.25 due by the road commission to Coss & Otto to the extent that these liens were needed in order to compensate the surety companies for the losses incurred under the respective bonds; that the Ætna Company was entitled to the entire sum of $12,107.70 for losses under the bond on the state contract and other bonds not connected with the river road, subject, however, to the payment of $2,663.62, representing a proportionate part of the fee of the attorneys who represented Coss & Otto before the arbitrator. The amount of $8,552.-55 covered by the lien to the American Company was subject to a like deduction for attorneys' fees in the sum of $1,881.57 and the balance was distributed as follows: $5,-422.65 to the American Company, to compensate it for payments which it was required to make under the decree to the Magnolia Fuel & Supply Company and the Ohio Valley Sand Company, and the balance of $1,248.33 was distributed in proportion to their claims to three creditors of Coss & Otto who had furnished material on other projects. The decree should be modified so as to provide for the payment of interest as above directed, and the allowance to the American Company should be increased to enable it to make the interest payments charged against it to the extent thereof, provided, however, that the total allowance to the American Company will not exceed the sum of $6,670.98. The amount allowed in the decree to the three assignees above mentioned will be correspondingly reduced. The net amount allowed in the decree to the Ætna Company is sufficient to cover the additional interest payments to be made by it.

▮▮ The Ætna Company also assigns as error in its appeal that the fee of $2,000 allowed to the special master was too large. After a careful consideration of the record in this case, and particularly of the amount involved, we have come to the conclusion that the allowance was excessive. The fund of $20,660.25 was reduced to the sum of $16,-660.25 by the attorneys' fee which was fixed by prior agreement amongst the parties at 22 per cent. of whatever amount they might recover, and this sum was not regarded as excessive by the District Court. Consequently the total fund, the distribution of which the master was called upon to determine, was

$16,660.25. The principles which should govern the court when it is deemed necessary that the judicial work should be referred to a special master [1] are set out in the decision of the Supreme Court in Newton v. Consolidated Gas Co., 259 U. S. 101, at page 105, 42 S. Ct. 438, 439, 66 L. Ed. 844: "The value of a capable master's services cannot be determined with mathematical accuracy, and estimates will vary, of course, according to the standard adopted. He occupies a position of honor, responsibility, and trust; the court looks to him to execute its decrees thoroughly, accurately, impartially, and in full response to the confidence extended; he should be adequately remunerated for actual work done, time employed, and the responsibility assumed. His compensation should be liberal, but not exorbitant. The rights of those who ultimately pay must be carefully protected; and while salaries prescribed by law for judicial officers performing similar duties are valuable guides, a higher rate of compensation is generally necessary in order to secure ability and experience in an exacting and temporary employment which often seriously interferes with other undertakings. See Finance Committee of Pennsylvania v. Warren, 82 F. 525, 527, 27 C. C. A. 472; Middleton v. Bankers' & Merchants' Tel. Co. (C. C.) 32 F. 524, 525."

The record in the case does not enable us to determine with precision the amount of time spent by the master on the work, and consequently when the case is remanded for further proceedings in accordance with this opinion, the District Court should redetermine the fee in the light of this statement.

The American Company has filed a cross-appeal from so much of the decree of the District Court as determined that the costs of the suit, including costs, fees, and expenses of the special master, should be paid, 29 per cent. by the Ætna Company and 71 per cent. by the American Company. This objection is well founded. Both surety companies were interested in the distribution of the fund and the greater part of the costs were necessitated by the unsuccessful contention of the Ætna Company to the effect that the American Company should not be allowed to participate. We think that the costs in the District Court, including the costs and expenses of the special master, should be paid by the two surety companies in the proportion that their respective shares, to wit, $8,552.55 and $12,107.70, bear to the total sum of $20,660.25.

The Ætna Company and the American Company shall each pay its own costs in this court, and in addition, they shall pay the costs of the Magnolia Fuel & Supply Company and the Ohio Valley Sand Company in the same proportion as they are to pay the costs in the District Court.

The decree of the District Court is modified, and the case remanded for further proceedings in accordance with this opinion.

Modified and remanded.

---

[1] Equity Rule 59 provides: "Save in matters of account a reference to a master shall be the exception and not the rule, and shall be made only upon a showing that some exceptional condition requires it."