## HAYNER *v.* STANLY and others.

(*Circuit Court, D. California.* July 31, 1882.)

1. MEXICAN LAND GRANT—RES ADJUDICATA.

Prior to the acquisition of California by the United States, the Mexican government granted a tract of land therein to one H. In 1857, S., claiming to be the owner of a part of the land so granted under title derived from H., (the claim for which part had been confirmed to the grantor of S., but no patent therefor issued,) commenced an action of ejectment against G. and others, who were in possession of the lands, also claiming to own the same under title derived from H., and who had also obtained a confirmation of their claim to the premises, but no patent. On the trial of the action the principal question litigated was whether the premises in controversy had been conveyed by a deed made by H. to one F., under whom S. claimed, and it was determined that said deed did convey the lands, and judgment was rendered in favor of S. On appeal to the state supreme court this judgment was affirmed. Pending the litigation a patent for the lands was issued to the grantor of S., and some 20 years later patents were issued to G. *et al.* for the same lands. The grantees of G. *et al.*, after the issue of the latter patents, brought ejectment against the grantee of S. for the lands, and on the trial of that action offered to prove that the premises in controversy were not within the premises conveyed by the deed from H. to F. *Held*, that by the trial and judgment in the former action that point was determined in favor of S. and became *res adjudicata*, and the grantee of G. *et al.* was estopped from again litigating the question as against S. or his grantee, and that the issue of the patents on the claims of G. *et al.* did not, as to the question so determined, create any new title or right to again litigate the question determined by the former judgment, and that such question is not open to further litigation.

2. PATENT FOR LAND—LEGAL TITLE—DERIVATIVE TITLES.

M., a claimant under title derived from the original grantee of a part of the lands embraced in a Mexican grant, obtained a decree of confirmation, on which a patent was issued, and other claimants of the same land, under title also claimed to have been derived from the same original grantee, and whose claim had been confirmed prior to the issue of the patent to M., obtained patents for the same land some years subsequent to the issue of the patent to M. *Held—*

(1) That the issue of the patent to M. vested the entire legal title in him, and left nothing in the United States upon which the subsequent patents could operate, and consequently nothing passed by them. With the issue and delivery of the senior patent all authority or control of the executive department over the land passed away.

(2) That under such circumstances, in an action at law, the senior patent is conclusive as to the title, and cannot be assailed by the holders of the junior patent.

(3) The only remedy of the junior patentees is in equity, to charge the holder of the senior patent, if there are equitable grounds for so doing, with a trust for their benefit.

(4) While, in a proper sense, it may be true that in acting on a claim for land based on a Mexican grant, the United States has no interest in the derivative title from the original grantee of the Mexican government, yet where one held such a derivative title prior to the transfer of California to the United States,

he was one of the parties protected by the stipulations of the treaty, and it would seem was as much entitled to have his deed from the original grantee passed upon, as he was to have the original grant itself passed upon.

(5) The cases in which it has been held admissible, in an action at law between the holders of senior and junior patents for the same land, to examine into the equities for the purpose of attaching a prior equity to the junior patent, are all cases where the parties have sought to acquire lands belonging to the United States *upon different and independent adverse claims*, and have no application to a case where both parties claim under the same original grant or right, though by different derivative titles.

(6) Where two parties claim the same land under different derivative titles from the original grantee of the Mexican government, and one of them obtains a patent for the lands, the right, if any, of the other to relief in equity accrues on the day the patent issues. The cause of suit is full, complete, and perfect on that day, and is not dependent and cannot rest upon any subsequent proceeding or patent.

*Semble*, where such equitable action is not commenced until a time when by the state statute of limitations it would be barred, the United States circuit court, although a court of equity, and not absolutely bound by that statute, may, in analogy thereto, hold the cause to be stale, and decline on that ground to sustain a bill.

*The question* whether a patent gives a new cause of action so as to avoid the statute of limitations, where both parties claim under the same grant, *not determined.*

*B. S. Brooks* and *Wm. Leviston*, for plaintiff.

*Stanley, Stoney & Hayes, Delos Lake*, and *John Garber*, for defendants.

SAWYER, C. J. The governor of California in 1836 granted to Nicholas Higuera a tract of land called "Entre Napa." On November 13, 1847, before the transfer of California to the United States, said Higuera and wife conveyed to Mateo Fallon a part of said land, described (as translated from the Spanish language, in which the conveyance was written) as "a certain quantity of land lying, being, and situate in the district of Sonoma, and territory of Upper California, in the valley of Napa, containing, more or less, one square mile of land in the place known as the 'Rincon de los Carneros,' commencing at the wagon road, and ending at a point of the hill on the east." Said Fallon conveyed the same land to Julius Martin, July 1, 1850. Martin filed his petition for the confirmation of the grant, and his claim to the land so conveyed to him, with the board of land commissioners, under the act of 1851, on September 4, 1852. His claim was confirmed September 7, 1856; and upon such decree of confirmation a patent of the United States was issued to him April 3, 1858, which patent embraced the lands in controversy. The title of said Fallon and Martin became vested in Edward Stanly prior to December, 1857. On February 7, 1852, Nicholas Higuera conveyed to one

Riva the lands granted to him as before stated, *excepting from the conveyance all lands previously sold and conveyed.* On February 11, 1853, Marta Frias de Higuera, deriving title under said grant through said Riva, presented a petition to the board of land commissioners for a confirmation of a claim to a portion of said land so granted to Higuera, which claim was, confirmed February 13, 1857, and a patent issued in pursuance of said confirmation on November 4, 1879, which patent embraces a portion of the lands in question. On February 13, 1853, and July 12, 1854, Joseph Green, deriving title under said grant through said Riva, presented his petition to said board for confirmation of a claim to a portion of said lands granted to Higuera, which claim was confirmed on February 11, 1857, and, in pursuance of said decree of confirmation, a patent was issued to said Green April 7, 1881, which patent embraces a portion of the land in controversy. On March 3, 1853, Edward Wilson, deriving title from said Riva under said grant, also presented a petition to said board for a confirmation of a claim to a portion of said land, which claim was confirmed March 20, 1857, and a patent in pursuance of said decree of confirmation was issued to said Wilson on April 8, 1881, which patent also embraces a portion of the land in controversy. Eleven-twelfths of whatever title accrued, respectively, to said Marta Frias, Joseph Green, and Edward Wilson by virtue of said grant to said Higuera, and of said several conveyances from Higuera to Riva, and from said Riva, and from said proceedings and several patents, became vested in the plaintiff prior to the commencement of this action. On December 14, 1857, said Edward Stanly, who had before that date acquired the title of said Fallon and Martin, commenced an action in the district court of the county of Napa against said Marta Frias, Joseph Green, and others,—all being the parties under whom plaintiff derives title through said several conveyances,—to recover all the same lands now in controversy. The plaintiff, Stanly, alleged title to the lands. The defendants denied the title of plaintiff, and upon trial of the issues formed the facts were found for the plaintiff, and judgment for the recovery of the land thereupon rendered for the plaintiff; and under said judgment the plaintiff was put in possession on March 30, 1859, from which time the said Edward Stanly and the defendant in this action, John A. Stanly, who derives title from said Edward, have been in exclusive adverse possession till the present time. The main question litigated, and upon which the case turned, was as to what land was embraced in said deed from Higuera to

Fallon—whether it embraced the land now in controversy. And it was decided that it did.

Upon the foregoing facts appearing in the testimony, the plaintiff offered to prove what part of the land granted to Higuera was known as the "Rincon de los Carneros," for the purpose of showing that the land confirmed to Martin, and patented to him, as being the land conveyed by Higuera to Fallon, and from Fallon to Martin, was erroneously located in the patent, and is not the land described in said deeds of conveyance.

The questions, therefore, arise: (1) Whether the point is *res adjudicata* in the said action of *Stanly* v. *Green* and others, and, on that ground, not open to further examination. (2) Whether the patent to Martin is not conclusive upon the defendants in an action at law. In my judgment, both must be answered in the affirmative. At the date of the commencement of said action by *Stanly* v. *Green*, neither patent had been issued, and the parties stood upon an equal footing as to the derivative title from Higuera; the grant to Higuera, under which both parties claimed, being admitted. The parties to the present action are the same, or in privity with, the parties to the former action. The pleadings as to title are substantially the same in both actions, except that the parties have changed sides. The issues are substantially the same in matter and form. In the former case, as appears from the record, and the decision of the supreme court in evidence reported in 12 Cal. 159, the main question in issue fully litigated and determined, was as to what land was conveyed by Higuera to Fallon by the deed mentioned. It is precisely the same point which the plaintiff now seeks to contest by the evidence offered, and the evidence is precisely of the same kind and character as that introduced upon the same point in the former action. The defendants have fully and aptly pleaded the matter put in issue, litigated and determined in the former action by way of estoppel, and are in a position to fully avail themselves of that defense. In my judgment, the former determination is conclusive within the rule as established by the great mass of authorities, and even within the narrowest generally-recognized limits of the rule. The deed from Higuera to Fallon was the title upon which the plaintiff relied to recover. Of necessity, the court was obliged to determine whether it embraced the lands in controversy or not; and it was determined that it did. That determination, and the judgment resting upon it, were affirmed by the supreme court. That was the issue, in fact, litigated and adjudged.

If the title under and the effect of that deed were not directly in issue, and determined in such sense as to be available as an estoppel against further litigation, it would be difficult to determine what the limitation of the rule is. I think the case clearly within the principle applied in *Caperton* v. *Schmidt*, 26 Cal. 479, 501; and certainly within the case of *Marshall* v. *Shafter*, 32 Cal. 176, wherein my views are fully expressed in the concurring opinion. Page 199. The former adjudication is also conclusive, under the decisions of the supreme court of the United States. *Miles* v. *Caldwell*, 2 Wall. 38; *Sturdy* v. *Jackaway*, 4 Wall. 176; *Blanchard* v. *Brown*, 3 Wall. 249; *Campbell* v. *Rankin*, 99 U. S. 263; *Cromwell* v. *County of Sacramento*, 94 U. S. 351.

For the purpose of avoiding the effect of the former adjudication as an estoppel, it is insisted that the condition of the parties has changed since the trial of the former case, and that plaintiff in this case has acquired a new and different title from that litigated by her grantors, which is not affected by the matters before adjudged. But there is no change in title that in any respect affects the questions before litigated and determined. The case is not like any of those cited. There is now, as there was before, no dispute as to boundaries of two opposing Mexican grants. There was but one grant, under which both claim. There is now, and there was then, no dispute affecting the question as to the boundaries of the Mexican grant under which both claim. The same Mexican grant, as confirmed in parts to the grantors of both parties, covers the same land.

The question arises on the derivative title under the original grantee. The question is, which party acquired the title of Higuera under his grant to particular portions of the land? and this is the precise question which was litigated in the former suit. There is no change whatever in the title of circumstances or rights with reference to this particular question. The change in the circumstances does not avoid the point before determined. In view of the fact that nearly a quarter of a century has elapsed since the former trial, and that several of the actors in the transactions and witnesses on the trial in that case are dead, the conditions for attaining a correct determination of the question at issue were far more favorable then than than it is possible for them to be now. It would seem that this is a fit case, if ever there was one, for applying the rule of *res adjudicata*. In my judgment the point has been conclusively adjudged, and it is not open to further examination.

I also think the patent to Martin, under which defendants claim, unassailable in any action at law.

In *Beard* v. *Federy* the supreme court of the United States, following a long and unbroken line of decisions in the supreme court of California, declared the effect of a patent issued upon a Mexican grant confirmed in pursuance of the act of congress of 1851. The court says:

"In the first place, the patent is a deed of the United States. *As a deed, its operation is that of a quitclaim, or rather of a conveyance of such interest as the United States possessed in the land, and it takes effect by relation at the time when proceedings were instituted by the filing of the petition before the board of land commissioners.*

"In the second place, the patent is a record of the action of the government upon the title of the claimant as it existed upon the acquisition of the country. * * * This instrument is the record evidence of the action of the government upon the title of the claimant. By it the government declares that the claim asserted was valid under the laws of Mexico; that it was entitled to recognition and protection by the stipulations of the treaty, and might have been located under the former government, and is correctly located now, so as to embrace the premises as they are surveyed and described. As against the government, this record, so long as it remains unvacated, is conclusive. And it is equally conclusive against parties claiming under the government by title subsequent." 3 Wall. 492. See, also, 18 Cal. 26; Id. 570, 571; 20 Cal. 412; and many others in the California reports.

A great majority of Mexican grants, among which was that to Higuera, were inchoate, the legal title never having passed to or become perfected in the grantees. Upon the transfer of California to the United States, the legal title to such lands, subject to the equitable rights of the grantees to have their titles perfected, passed to the United States. The proceeding provided for in the act of 1851, establishing the board of land commissioners, was the mode provided in pursuance of the provisions of the treaty for ascertaining who had grants of land or equitable claims entitling them to recognition, and to have their grants or titles perfected. The effect of the patent issued in pursuance of the proceedings provided for in its first character as a deed or conveyance, as held in the cases cited, is to pass the legal title in the United States at the date of the filing of the petition to the patentee. The petition of Martin and all proceedings under it are regular upon their face, and the patent issued therefor under said decree vested the entire legal title, whether rightfully or wrongfully, in Martin. His petition was first filed; his confirmation was first; and his patent is long prior in point of time to either of

those under which plaintiff claims.    Before either of the patents under which plaintiff claims had been issued, the grant under which the defendants claim had been confirmed, and the title to the land had been legally conveyed to the defendants' grantor.    There was nothing left in the United States upon which the subsequent patents could operate.

In the language of Mr. Justice Field, in *Patterson* v. *Tatum*, 3 Sawy. 172, wherein both parties had patents:

"A patent is the instrument by which the government, whether state or national, passes its title; it is the government conveyance.    But if the government possesses at the time no title, none passes by its execution.    It is of itself evidence of title only, because government being the original source of title, the presumption of law is that the title remained with the government until some other disposition of it is shown.    But if an earlier patent is produced, the subsequent one ceases to have any operation.    The title passing by the first conveyance is not affected by the second until the first is got out of the way.    If the first was issued from improper motives, corrupt actions, erroneous views of duty, or mistaken considerations as to matter of fact or law by the officers of the government to whom the execution and issue of patents is entrusted, a court of law can afford no remedy to the second patentee; he must resort to a court of equity for relief.    So, also, if particular facts respecting the condition or location of the property must be previously ascertained and determined by a special tribunal appointed for that purpose, and that tribunal has come to erroneous conclusions, upon which the patent has issued, such conclusions cannot be questioned collaterally, and the patent be thereby invalidated in the action of ejectment.    Relief in such cases can only be afforded by a direct proceeding by bill, information, or *scire facias*, either to revoke the first patent or to restrain its operation, or to subject, where equitable grounds exist, the land to certain trusts in the first patentee's hands.    A court of law, in an action of ejectment, cannot listen to any objections founded upon such considerations.    But where the action of the officers in the execution and issue of the patent, or the correctness of the conclusions of the special tribunal, is not assailed, but the objection to the patent reaches beyond such action and conclusions, and goes to the existence of a subject upon which such officers or tribunal could act,—that is, to the title in the grantor,—no such difficulty exists in its consideration in a court of law.    That tribunal is fully competent to pass upon the question whether a title existed at the time in the government, as it would be whether the title existed in an individual, where the grantor is a private party."

This language covers the case at bar in all particulars.    The title passed to Martin by the first patent, and there was nothing left upon which the second patent could operate.    Conceding, for the purposes of the argument, that the patent was erroneously given to Martin, when it ought to have gone to the subsequent claimants and patentees, the title, nevertheless, passed; and the only remedy of the in-

jured parties is in equity to charge Martin and his grantors, if there are equitable grounds for so doing, with a trust for their benefit. The legal title is in Martin, and that must control in ejectment.

The case of *Moore* v. *Robbins,* 96 U. S. 533, fully sustains this view. The court says:

"While conceding for the present, to the fullest extent, that when there is a question of contested right between private parties to receive from the United States a patent for any part of the public land, it belongs to the head of the land department to decide that question, it is equally clear that when the patent has been awarded to one of the contestants, and has been issued, delivered, and accepted, all right to control the title or to decide on the right to the title has passed from the land-office. Not only has it passed from the land-office, but it has passed from the executive department of the government. A moment's consideration will show that this must, in the nature of things, be so. We are speaking now of a case in which the officers of the department have acted within the scope of their authority. The offices of register and receiver and commissioner are created mainly for the purpose of supervising the sales of the public lands; and it is a part of their daily business to decide when a party has by purchase, by pre-emption, or by any other recognized mode, established a right to receive from the government a title to any part of the public domain. This decision is subject to an appeal to the secretary, if taken in time. But if no such appeal be taken, and the patent issued under the seal of the United States, and signed by the president, is delivered to and accepted by the party, the *title of the government passes with this delivery.* With the title passes away all authority or control of the executive department over the land, and over the title which it has conveyed. It would be as reasonable to hold that any private owner of land who has conveyed it to another can, of his own volition, recall, cancel, or annul the instrument which he has made and delivered. If fraud, mistake, error, or wrong has been done, the courts of justice present the only remedy. These courts are as open to the United States to sue for the cancellation of the deed or reconveyance of the land as to individuals; and if the government is the party injured, this is the proper course. 'A patent,' says the court in *United States* v. *Stone,* 2 Wall. 525, 'is the highest evidence of title, and is conclusive as against the government, and all claiming under junior patents or titles, until it is set aside or annulled by some judicial tribunal. In England this was originally done by *scire facias;* but a bill in chancery is found a more convenient remedy.' See, also, *Hughes* v. *United States,* 4 Wall. 232; S. C. 11 How. 552. If an individual setting up claim to the land has been injured, he may, under circumstances presently to be considered, have his remedy against the party who has wrongfully obtained the title which should have gone to him. But in all this there is no place for the further control of the executive department over the title. The functions of that department necessarily cease when the title has passed from the government. And the title does so pass in every instance where, under the decisions of the officers having authority in the matter, a conveyance generally called a patent has been signed by the president, and sealed and delivered to and accepted by the grantee."

These observations apply with still greater force to patents issued by the same department in pursuance of the judicial proceedings had before the board of land commissioners, and the courts on appeal from its decisions under the act of 1851. The patent regularly issued to Martin, after a full investigation by a board and courts provided for the purpose and having jurisdiction.

In *United States* v. *Morillo,* 1 Wall. 707, it was assumed, though not expressly decided, that when a grant has been once confirmed to one party and patented, the power of the board and court as to the land so patented is under the *same grant* exhausted. The case of *Adams* v. *Norris,* 103 U. S. has no application.

It has been sometimes somewhat loosely said that the United States has no interest in the *derivative* titles, except to ascertain that it has a party before it apparently entitled to be heard. This may be true in a proper sense as to the derivative titles first originating since the acquisition of California. But in this case Fallon acquired his title from Higuera before the transfer of California, so that under his derivative title, held at the date of that treaty, he was one of the parties protected by the stipulations of the treaty, and, as the claimant of the property, it would seem that he was as much entitled to have his deed from Higuera to him passed upon, as the grant from the government to Higuera. In no other way could he be protected; and Martin stood in his shoes, as he acquired his rights. The plaintiffs' *derivative* title originated after the date of the treaty. But, however this may be, it was necessary for the board to determine the question whether Martin was entitled to a confirmation and patent of a portion of this particular grant, and if so, of what portion; and that being determined in his favor, and the patent having issued, the legal title under that grant to the part embraced in the patent became perfected in him, and it is unassailable at law by a party receiving a subsequent patent to the same part under the same grant. In opposition to this view, many cases are cited from the United States supreme and other courts, to show that it is admissible in an action at law to examine into the equities for the purpose of annexing a prior equity to a junior patent from the same source, and giving it effect as against the prior patent. But none of them are like this case. They are all cases where different parties have sought to acquire lands belonging to the United States upon different and independent adverse claims and courses of proceedings, and the court has inquired into the origin of the right, which has ripened into a patent,

v.13,no.5—15

and regarded the patent as taking effect by relation from the date when that right first attached. The prior act, by which the right to a patent as against the government vested, is regarded as a part of the title. This is very well illustrated by the court in the case of *Bagnell* v. *Broderick*, 13 Pet. 451, one of the class of cases and one of the cases cited. The court says, in distinguishing a prior case:

"In that case [*Ross* v. *Borland*, 1 Pet. 662] there were conflicting patents, the younger being founded on an appropriation of the specific land by an entry in the land-office of earlier date than the senior patent. The court held that the *entry and junior patent* could be given in evidence *in connection as one title*, so as to overreach the elder patent." Id. 450, 451.

This case is, upon the whole, favorable to the defendants. The entry in the land-office is the purchase of the land from the government. Upon a proper entry, the land becomes the property of the party making the entry. *People* v. *Shearer*, 30 Cal. 648; *Witherspoon* v. *Duncan*, 4 Wall. 218; 2 Sawy. 455. Often the patent does not issue for years after the entry. But when it does issue, it attaches itself to the entry, and the patent is regarded as taking effect by relation as of the date of the entry, and in that way overreaches the elder patent issued upon a younger entry. *Gibson* v. *Choteau*, 13 Wall. 100–102. Some of these cases are also put upon the ground that the laws of the state in which they arose abolish all distinctions between law and equity proceedings, and all questions may be examined in the same case. In the cases arising under Mexican grants cited, there are always two grants, and the contest is between them. In those cases the patent also *operates in its other aspect*, recognized in the cases before cited, as a record of the government of its action and determination adjudging the grant to be valid, and fixing its location, in which character it relates to and takes effect, not from the filing of the petition merely, as in the aspect of a deed of conveyance, but *from the date of the grant*. Such was the case of *Henshaw* v. *Bissell*, cited from 18 Wall. and 1 Sawy. In this case there is nothing to go back to by relation. There was but one Mexican grant, under which both parties claim by derivative title, the defense on derivative title accruing before the acquisition of the country, which was therefore as much within the protection of the treaty as the original grant. But defendant's conveyance was first in time, his petition first filed, his confirmation first had, and his patent first issued. His derivative title was properly examined by a board and courts having jurisdiction, and whose duty it was, under the treaty, to protect this grantee's interest, and his patent issued in the proceeding being regu-

lar on its face and first in time upon all points, in any view that may be taken, carried with it the legal title. There is nothing in the plaintiff's case to which his patent can go back by relation, so as to overreach defendant's title, which must prevail at law. In my judgment, this case is not within any case, or the principle of any case, cited by plaintiff's counsel.

It is said that the construction of the deed to Fallon is purely a matter of legal cognizance, and therefore is open to consideration in this case. This was, doubtless, so in the former action, when neither party had secured the legal title; and the whole case depended upon the construction of that deed. But the inquiry now is, not which party ought in fact and in law to have received the title, but which party in fact and in law has acquired the title; and the determination of that question rests wholly upon the patents. They go back to the United States, the source of title, and the defendant has the elder patent, regularly issued in pursuance of the law. It is, also, in my view, highly proper, under the circumstances, and after so long a lapse of time, that the remedy should be in equity. There may be, and probably are, many equities on the side of the defendant which could and would be considered by a court of equity, but which would be wholly unavailable at law.

The defendant's patent, issued more than 24 years ago, and more than 23 years before the commencement of this action. If plaintiff has any equitable ground upon which she is entitled to a decree controlling the title now in defendant for her own use, her right, or the right of her grantors, to relief accrued on the day the patent issued. The cause of suit was as full, complete, and perfect on that day as it is now. Her equitable right in no respect rests upon any of the subsequent proceedings, or the patents issued on them, under which she claims. Her equities ante-date all those proceedings, and rest on the defects in the deed to Fallon by which that deed fails to cover the land in controversy, if any such defect there be; and the trust to hold the title for the benefit of plaintiff, or her grantors, arose and became fully vested upon the issue of the patent to defendant's grantor. That cause of suit in the state courts under the state statute of limitations would have been barred in four years at the longest, and would have been barred nearly six times over before the commencement of this action. The United States circuit court, although, as a court of equity, it may not be absolutely bound by the state statute of limitations, might very well, in analogy to the statute, hold the cause to be stale, and decline to entertain a bill on that

ground. Yet, if the same questions can be examined in the action at law upon the patents recently issued, which are held to give a new cause of action, it may be that neither the staleness of the equities nor the statute of limitations would be available defenses, notwithstanding the fact that there is no-change in the *status* of the parties *with reference to the particular grounds of recovery relied on.* And such, also, would have been the case if plaintiff had waited 50 years more before procuring to be issued the patents under which she claims. The principle that a new cause of action arises upon the issue of a patent in this class of cases ought not, in my judgment, to be extended. But it is unnecessary now to decide whether a patent gives a new cause of action, so as to avoid the statute, when both parties claim under the same grant. Again: Upon looking into the record and opinion of the supreme court, in evidence, it appears that on the former trial testimony was given showing that before the purchase either by Martin or Fallon, and before any rights had accrued to the plaintiff's grantors, Higuera pointed out at various times to Fallon, Martin, and others the lands in controversy as the lands intended to be conveyed, and as the lands in fact conveyed, upon which pointing out and representations the parties doubtless relied in making their several purchases. A court of equity might take into consideration these and other equities, if any there be, which might be less available in an action at law. There might also be a case for the proper application of the maxim of "Where the equities are equal the position of the possessor is best," or of other equitable maxims. So, also, several of the persons who appear to have been witnesses for defendant's grantor, it is well known as a public historical fact, were among the prominent historical characters of the early days of California, and may now be, and, in fact, are generally known to be dead. These are some of the manifest disadvantages under which defendant must labor if the matters in contest are examinable at law at this late period of time. The ends of justice are much more likely to be subserved by referring cases of this character to courts of equity, where they exclusively and properly belong.

The testimony offered I think inadmissible on both grounds discussed, and the objection to its introduction is sustained.