PACIFIC COAST MINING & MILLING CO. *v.* SPARGO and others.*

SAME *v.* FICK and others.*

*Circuit Court, D. California.*   April 16, 1883.)

1. PATENT TO LANDS EMBRACING MINES.

Where a patent to lands is issued by the United States, it carries all mines in the lands patented, to which no right has attached at the time the patent issues.

2. PATENT RELATES TO ENTRY.

Where a purchaser enters and pays for a tract of public lands receiving a certificate of purchase therefor, the patent subsequently issued in pursuance of such certificate relates to and takes effect from the date of the entry.

3. RESERVATION IN PATENT OF RIGHT TO WORK A MINE.

Where a patent to public land reserves the right of a proprietor of a mining vein or lode to extract and remove his ore therefrom, should it be found to penetrate or intersect the lands granted by the patent, the reservation refers only to parties who are proprietors at the time when the right of the patentee attaches to the land, or the date of the entry or patent.

At Law.

*Garber, Thornton & Bishop* and *F. W. Cole,* for plaintiff.

*C. W. Cross,* for defendants.

SAWYER, J.   In the first case the grantor of plaintiff entered and paid for the land described in the complaint at the rate of $1.25 per acre, at the proper land-office, and received his certificate of purchase on December 19, 1874.   In pursuance of his purchase a United States patent in the usual form issued to him on September 6, 1876. In March, 1880, the grantors of defendants located, in the usual way, a gold-bearing quartz lode, under the surface on the land in question, which they and the defendants worked under ground by means of a tunnel extended into it from without the boundaries of the land. Defendants claim title under this mining location.   The patent to the plaintiff's grantor contained the clause:

"Subject to any vested and accrued water rights for mining, agricultural, manufacturing, or other purposes, and rights to ditches and reservoirs used in connection with such water rights as may be recognized and acknowledged by the local customs, laws, and decisions of courts; and also subject to the right of *the proprietor of a vein or lode* to extract and remove *his ore* therefrom, should the same be found *to penetrate or intersect the premises hereby granted, as provided by law.*"

Defendants insist that the mine subsequently located is embraced in this provision: "Also subject to the right of the proprietor of a

*From the Pacific Coast Law Journal.

vein or lode to extract and remove his ore therefrom, should the same be found to penetrate or intersect the premises hereby granted, as provided by law." The language of the exception, strictly construed, seems to refer only to mines located outside the lands which, by their dip or inclination, penetrate or intersect the land patented, and not to mines discovered and located within it. But, however this may be, the language certainly does not mean parties claiming to be "proprietors" who locate mines after the issue of the patent, but only persons who are "the proprietors" of mines at the time when the patentee's rights attached. When the patent issues, it covers everything embraced in the land to which no prior right has attached, otherwise the patent would not have reserved the rights of "the *proprietor* of a vein*," but would have reserved *the vein itself.* There can be no right of a "proprietor" to reserve unless there is a proprietor who has rights to protect at the time the reservation is made. The patent passed the entire title as against any subsequent locator, and, that being so, no legal right could be acquired against the patentee by a subsequent location. No man could become the proprietor of a mine already granted, except by purchase from the grantee. The patent cannot be attacked collaterally in this action. The land-officers were charged with the duty of ascertaining whether the lands were subject to be patented or not, and their determination is conclusive; at least, in this action.

The case of *Steel* v. *St. Louis Smelting & Refining Co.* 106 U. S. 447, [S. C. 1 Sup. Ct. Rep. 389,] decided at the present term of the supreme court, is emphatic on this point. But the same principle has been established by numerous prior decisions of that court. *Smelting Co.* v. *Kemp,* 104 U. S. 636; *Quinby* v. *Conlan,* Id. 426; *Moore* v. *Robbins,* 96 U. S. 530; *Shepley* v. *Cowan,* 91 U. S. 330; *Johnson* v. *Towsley,* 13 Wall. 72; *Vance* v. *Burbank,* 101 U. S. 519.

In the other case, against *Fick et al.,* the grantor of the plaintiff entered the land, paid for it, and received his certificate of purchase on December 19, *1874.* The mining location of defendants was made August 14, *1875,* while the patent issued upon the certificate of purchase is dated September 6, 1876. The difference between this and the other case is that in this case the mining location was made after the entry and payment for the land, but before the patent issued; while, in the other, the mining location was not made till after the patent issued. But this can make no difference in the rights of the parties. The purchaser became the equitable owner of the land the moment he entered and paid for it, and received his certificate of

purchase. From that time the United States had no real interest in the land. It only held the dry legal title in trust for the purchaser, pending the usual necessary delay in issuing patents, and the patent only perfected the title, the right to which had already vested. Lands cease to be public lands when entered and paid for. *People* v. *Shearer,* 30 Cal. 648; *Gwynne* v. *Niswanger,* 15 Ohio, 368; *Astrom* v. *Hammond,* 3 McLean, 108; *Carroll* v. *Perry,* 4 McLean, 26; *Carroll* v. *Safford,* 3 How. 441; *Witherspoon* v. *Duncan,* 4 Wall. 210, 219; *Hughes* v. *U. S.* Id. 232; *Union M. & M. Co.* v. *Dangberg,* 2 Sawy. 454.

When the patent finally issues it attaches itself to the entry and relates to the date of the entry. It is regarded, for the purpose of protecting the rights of the patentee against parties seeking to acquire intervening rights, as if issued at the date of the entry. The entry and patent are regarded as one title. *Bagnell* v. *Broderick,* 13 Pet. 450–1; *Gibson* v. *Chouteau,* 13 Wall. 93; *Shepley* v. *Cowan,* 91 U. S. 337; *Smelting Co.* v. *Kemp,* 104 U. S. 647; *Hayner* v. *Stanly,* 8 Sawy. 225; [S. C. 13 Fed. Rep. 217.] The title of the plaintiff dates from the date of the entry and payment, and not from the date of the patent; and the reservation in the patent relates to that date, and therefore antedates the mining location of the defendants. The plaintiff in each case has the legal title to the mine, as well as the land, and is entitled to recover the lode from which it has been ousted, and it is so ordered.