KILHAM v. WILSON.

(Circuit Court of Appeals, Eighth Circuit. January 3, 1902.)

No. 1,499.

**1.** PRINCIPAL AND AGENT—SALES—TERMS—RIGHT TO DETERMINE.

Where real estate agents, for an agreed compensation, undertake to find a purchaser satisfactory to the owner, he alone has the right to determine the consideration for which he will sell and the details governing the payment therefor to him.

**2.** ACTIONS—FORMER ADJUDICATION—JUDGMENT AT LAW—BAR TO SUIT IN EQUITY.

A real estate firm undertook to find a purchaser for defendant's cattle ranch for a certain compensation, and, in addition thereto, all that he should receive in excess of $225,000. It found a purchaser, who agreed to pay $275,000, paying part cash and notes secured by chattel mortgage for the balance, the deeds of the real estate being left in escrow until full payment. The purchaser defaulted, and defendant received, including cash, proceeds of foreclosure of the mortgage, and value of property restored to him, much less than the $225,000. The surviving partner in the firm sued defendant to recover the fixed compensation and also $50,000 contingent fee, and recovered judgment for the amount of the fixed compensation, but was defeated as to the $50,000, the jury finding that defendant had not received any sum in excess of the $225,000. *Held*, that such judgment was a bar to an action in equity for accounting as to such $50,000, or any part thereof, as excess received by defendant over the $225,000 for such ranch.

Appeal from the Circuit Court of the United States for the District of Colorado.

This action was instituted by William S. Everett, the surviving partner of a firm consisting of himself and one Robinson, and afterwards upon the death of Everett was revived in the name of Fred C. Kilham, administrator of his estate, who is the appellant herein, against William J. Wilson, the appellee. The purpose was to charge Wilson with a trust in favor of the estates of Everett and Robinson as to certain lands, live stock, and personal property described in the bill, and to secure an accounting with respect thereto.

The record shows that in 1883, Wilson being the owner of a certain ranch known as the "Circle Ranch," located on the Republican river and its tributaries in the states of Colorado, Nebraska, and Kansas, employed Everett and Robinson to negotiate a sale of the same for him, and agreed to pay them as commissions for so doing a certain fixed sum (which was recovered in a prior action, and is not here involved), and, in addition thereto, any amount in excess of $225,000 which he might actually receive for the same. At the time of making the contract of employment, Wilson represented that his ranch had 9 miles frontage on the Republican river, running back 15 miles from the river, and that 3,000 acres of the land were held by him in fee simple, and that the books showed that there were about 9,000 head of cattle on the ranch. Everett and Robinson entered into negotiations with an English syndicate, which resulted, on December 14, 1883, in the execution of a contract between Wilson and the syndicate, acting for and on behalf of a corporation to be organized under the English companies act, and known as the New United States Cattle Ranch Company, Limited, by which the syndicate agreed to buy the ranch and equipment for $410,000, payable as follows: $117,400 in full-paid stock of the proposed corporation, which was to be given to certain Englishmen for services as promoters; the remaining sum, $292,600, to be paid as follows: $63,850 in cash within two months after the signing of the contract of sale, and the balance, $228,750 in two equal installments of $114,375, each in one and two years after the final consummation of the sale. Six per cent. of $292,600 was to go to certain other promoters of the deal, so that, after deducting the same, there was left the sum of $275,000 as the net consideration which Wilson agreed to receive, and

this, according to the contract, he was not to receive in full until the expiration of two years. The payment of the installments of $114,375 each was to be secured by a bond and chattel mortgage upon the personal property and cattle, and also by placing the deeds conveying the real estate in escrow until final payment should be made. The chattel mortgage was to be subject to foreclosure at any time after two months after default in payment of either one of the two installments. After this contract was executed, it was found that Wilson did not have a perfect title to the 3,000 acres of land which he was to convey in fee simple, and in lieu thereof, by supplemental agreement of the parties, he executed a bond in the penal sum of $90,000, with sureties, to secure the conveyance to the English company of such land on or before July 1, 1884. The proof shows that good title was secured by Wilson to the full amount of 3,000 acres of land pursuant to the condition of the bond, and that deeds conveying the same to the English company were deposited in escrow, as required by the contract, to be delivered to the English company upon full payment by it of the deferred installments of the purchase price; otherwise to be redelivered to Wilson. A quitclaim deed was executed, conveying to the English company Wilson's interest in the 200,000 acres of public land fenced and used by him as a range or pasture. Owing to the uncertainty about the true number of cattle on the ranch and to the difficulty of at once rounding them up for manual delivery, a bond in the penal sum of $200,000, with sureties, was, by agreement, taken from Wilson, conditioned for the delivery of at least 6,000 head of cattle by the close of the round-up in the year 1885. These things being done, the English company, on April 21, 1884, executed its chattel mortgage pursuant to the terms of the contract, reconveying the personal property, including the cattle, to Wilson, as further security for the payment of the deferred installments of purchase price, and on that day took formal possession of the ranch. The cash payment was made in time and manner satisfactory to Wilson. While there is some little dispute about the delivery of the full 6,000 head of cattle, it is true, we think, that a delivery was made conformably to the requirement of the contract between the parties, and within the time fixed by the condition of the bond. The first installment of $114,375 matured April 21, 1885. Of this, only $22,385.09 was paid, and, after waiting two months, as required by the provisions of the chattel mortgage, Wilson caused the personal property, including the cattle, to be advertised for sale on September 19, 1885. The sale occurred, and all the personal property, including the cattle on the ranch, was sold, bringing a net sum of $101,353.40. Title to the 3,000 acres of land conveyed to the English company was, by the withdrawal of the deeds placed in escrow, restored to Wilson. This land, according to the proof, we estimate to be of the reasonable value of $10,350.

From the foregoing it appears that Wilson actually received, in cash and value of real estate taken back by him for his ranch and cattle, the total sum of $194,107.49. This sum. less $17,468.75, advanced by Wilson, pursuant to a contract for the operation of the ranch, was the full value, either in cash or land,' or both, which Wilson ever actually received for his ranch and cattle. Making the deduction for advances made by Wilson, it appears that the actual net sum received by him was $176,638.74. This is considerably less than $225,000, which Wilson was first to receive before the brokers were entitled to the contingent commission sued for. To overcome the effect of this situation, complainant averred in his bill that such irregularities attended the sale of the cattle and personal property under the chattel mortgage as avoided the sale. He averred particularly that the property brought an unreasonably low price at the sale; that a large number of the cattle were not present at the place of sale, but were upon the ranch, and sold for range delivery; and that the purchase of a large part of the cattle by one Green, ostensibly for himself, was really for and on behalf of Wilson; and that, inasmuch as Wilson was prohibited by the statutes of Colorado from becoming a purchaser at the sale under his own chattel mortgage, he was chargeable in an accounting as to what he received from the sale of his ranch and property with the real value of the property so indirectly acquired by him. It is contended that, when so charged with

the real value, it will appear that he received a sum largely in excess of $225,000, which excess, it is claimed, belongs to the complainant as commissions due to Everett and Robinson, under their contract of employment. The bill avers that there were divers modifications of the contract of sale as originally made, and among them that, instead of delivering about 9,000 head of cattle,—which it was stated the books showed to be on the ranch,— Wilson finally agreed and guarantied a manual delivery of 6,000 only, and gave bond, as hereinbefore stated, conditioned for the delivery of the same at some time during the seasons of 1884 and 1885; and that, instead of conveying 3,000 acres of land in fee simple, as originally agreed, Wilson gave bond, as hereinbefore stated, conditioned for securing and depositing in escrow deeds conveying the same to the English company on or before July 1, 1884; and instead of conveying 200,000 acres of pasture and range land, fenced in, as alleged to be required by the original contract. Wilson executed quitclaim deeds conveying that quantity of the public domain which he had been using as a range. It is claimed, even if Wilson performed the contract as finally agreed upon, it was such a departure from that originally contemplated that it largely contributed to the default of the English company in making payment for the ranch. It is claimed that Wilson's refusal to make certain concessions, or to extend the time of the payment of the first installment according to what is claimed to have been contemplated in the contract of purchase, precipitated the mortgage sale, and that, therefore, the default was unlawfully declared. and the sale under the terms of the chattel mortgage voidable. It is also averred, in substance, that the actual value of the property as originally represented by Wilson to be for sale was largely in excess of $225,000, and that complainant is entitled to an accounting with respect to the actual value of the property as originally represented by Wilson. Defendant, by his answer. admitted the employment of Everett and Robinson as averred; alleged that no misrepresentations were made to them, that they knew the facts constituting the uncertainty as to the number of cattle on the ranch and the character and extent of defendant's right to the range on the public domain, and knew how the defendant intended to acquire title to the 3,000 acres of land which he was to convey in fee simple; and that they understood and fully acquiesced in the contract as made between the defendant and the English company on December 14, 1883. and each and all of the modifications thereof. Defendant denies that there was any irregularity in the manner of advertising or conducting the sale under the chattel mortgage, and avers that the same was in all respects regular and lawful. He avers that by the contract as made between himself and Everett and Robinson they were to receive a certain fixed compensation for their services, and, in addition thereto, any sum over and above $225,000 which he might actually receive for his ranch; that the amount actually received by him in cash directly from the English company from the sale of personal property under the chattel mortgage and in the value of lands restored to him by redelivery of the deeds deposited in escrow fell far short of $225,000, and, as a result thereof, they now had no claim against him. Defendant also filed a plea alleging, in substance. that complainant is estopped from maintaining this action by a former judgment rendered in an action at law instituted in the circuit court of the United States for the district of Colorado. in which Everett and Robinson were plaintiffs and Wilson was defendant, to recover from Wilson on the identical cause or causes of action which are now alleged against the defendant in the present bill. The record shows that after issue was joined in the action at law the same was heard upon the merits. and resulted in a judgment. prior to the commencement of this action. in favor of the plaintiff in that case. for the sum of $10,000 for the absolute or fixed commissions, and nothing for the claim for the contingent compensation which is the subject of the present suit. Testimony was taken on the issues raised by the foregoing pleadings, and the case was submitted to the trial court, which afterwards rendered a decree dismissing the bill. The assignment of errors challenges the correctness of the court's action in dismissing the bill. and points out divers particulars, which will be sufficiently referred to in the opinion.

R. T. McNeal (E. T. Wells, on the brief), for appellant.

T. M. Patterson (E. F. Richardson and H. N. Hawkins, on the brief), for appellee.

Before SANBORN and THAYER, Circuit Judges, and ADAMS, District Judge.

ADAMS, District Judge, after stating the case as above, delivered the opinion of the court.

The bill of complaint in this case is very lengthy, and contains a variety and great prolixity of averments; but when analyzed it is found to state a cause of action founded on a contract by which the defendant agreed to employ the complainant's intestates to make sale of a ranch belonging to him, and agreed to pay them (besides a certain fixed commission, not now in controversy) a contingent compensation of whatever they might secure for defendant in excess of the sum of $225,000; and to assert a claim that they are entitled by virtue of their contract to $50,000 as their contingent compensation. On account of the fact disclosed by the record that defendant finally received cash, notes, and property for his ranch in lieu of money exclusively, complainant asserts that defendant is in some manner a trustee with respect to the property in question, and, as such, subject to equitable jurisdiction for an accounting, to determine the rights and interest of complainant's intestates in and to the same. It is contended—and with much reason—that complainant mistook his remedy, that complainant's intestates never had any lien on the property for their compensation, that defendant never was trustee for them, that the record presents no case for an accounting in equity, and that complainant's only available action was at law to recover for money had and received by defendant to complainant's use. It is unnecessary and inadvisable, in the view we take of the plea of former adjudication, to express our conclusion on this contention. The view suggested by the bill, but apparently not vigorously contended for in argument, that defendant is somehow under obligation to complainant by reason of an alleged failure to have for sale the full number of cattle and the full extent of range originally represented to belong to him, and also by reason of the several modifications of the original contract between defendant and the English company, is, in the light of the proof, worthy of no consideration. The contract of December 14, 1883, fixing, among other things, 6,000 head of cattle as the minimum number for delivery to the purchasing company, and providing for a bond to secure the manual delivery of all thereof prior to the final round-up in the year 1885, superseded all prior contracts, and complainant's intestates so recognized it, and agreed that all obligations of defendant created by any former contracts with them were canceled and held for naught. On December 15, 1883, they entered into the following agreement with defendant, namely:

"Denver, Colo., Dec. 15, 1883.

"Whereas, a certain contract or contracts have heretofore been entered into between William J. Wilson, of Denver, Colorado, of the one part, and William S. Everett and J. M. Robinson, Esqrs., of Chicago, Ill., and each of

them, of the other part, for the sale of the Circle Ranch, horse and cattle, belonging to said Wilson; and whereas, a contract has this day [obviously referring to the contract of date December 14, 1883] been executed by the said Wilson, as vendor, and the said Everett, as ag't and guarantor of the said Wilson, for the sale of said ranch and cattle to the New U. S. Cattle Ranch Company of London, England, and which last contract supersedes all other prior contracts in which the names of said Everett and Robinson or either of them appear: Now, therefore, all contracts, agreements, obligations, or other liabilities heretofore entered into, and in which the names of said Everett and Robinson, or either of them, appear, are canceled and held for naught, and the said Wilson is hereby released from same; the commissions to said Everett and Robinson to be $5,000 and a reasonable amount above said sum as may be just and fair according to the advantage said [and] William S. Everett may prove to be, in having parties purchaser receive the property sold under and virtue of contract of sale made this day as we may agree upon.

"[Signed]                                  William S. Everett.
  "                                         W. J. Wilson."

The modifications of the contract made thereafter, consisting of substituting a bond, with sureties, conditioned for securing and depositing in escrow deeds conveying 3,000 acres of land in fee simple at some time in the future in lieu of immediate delivery thereof, and other modifications in the details of executing the contract, were undoubtedly well known to and acquiesced in by the complainant's intestates. Even if they were not, it is difficult for us to perceive how they could have materially affected the rights of complainant's intestates. They were to secure a purchaser for the ranch on terms satisfactory to defendant. He alone had the right to determine the consideration for which he would sell the same, and also the details governing the payment therefor to him. They were interested solely in the surplus he might receive over and above $225,000.

Having disposed of the foregoing matters, we are now brought to what complainant's counsel calls the principal question in the case, and one to which their argument is mainly addressed, namely, whether defendant so declared a default, so exposed the property for sale under the chattel mortgage, or so indirectly purchased property at that sale in violation of the laws of the state of Colorado as to avoid the same, and entitle complainant to an accounting, based upon what the property sold was really worth, instead of upon what it actually brought at the sale. If the sale was valid, defendant never received the amount of $225,000 for his ranch, and, much less, any sum in excess of $225,000, so as to entitle complainant to anything for the contingent compensation sued for in this action. A large amount of evidence was taken on this issue, but, in the view we take of the effect of the action at law and the judgment therein rendered, it is unnecessary to enter upon a consideration of this evidence. On January 28, 1886, Everett and Robinson, in their lifetime, instituted their action at law in the circuit court of the United States for the district of Colorado against William J. Wilson, the defendant herein. They filed a complaint in words and figures as follows:

"For a cause of action plaintiffs say that heretofore, to wit, on the first day of November, A. D. 1885, defendant became and was indebted to plaintiffs in the sum of sixty-five thousand dollars on an account for services by plaintiffs performed at the request of defendant at the city of Chicago,

in the state of Illinois, and at the said district of Colorado, and at London, England, between the first day of June, 1883, and the first day of November, A. D. 1885, in and about the sale of certain lands and certain horned cattle and other personal property of defendant; that defendant hath not paid the said sum of money nor any part thereof. Wherefore plaintiffs demand judgment against the said defendant for the sum of sixty-five thousand dollars and their costs."

In due course of procedure a bill and supplemental bill of particulars was filed in the case, as follows:

"William J. Wilson to William S. Everett and James M. Robinson, Dr. To services rendered by the said Everett and Robinson between June 1st, 1883, and November 1st, 1885, at your request, in and about negotiating a sale for your behalf to the New United States Cattle Ranch Company, Limited, of London, England, of the Circle Ranch, located on the Republican river and its tributaries in the states of Colorado, Kansas, and Nebraska, with the appurtenances and the cattle and horses which were on or about the 14th day of December, 1883, upon the range belonging to or connected with the said Circle Ranch, and the buildings, dwellings, branding irons, books, and records of said Circle Ranch, and the saddles, bridles, and harness connected with or belonging to the said ranch, two patented horse hayrakes then upon the said ranch, and the other cattle or property belonging to or connected with the said Circle Ranch on the 14th day of December, 1883, aforesaid, and the water rights and other rights and privileges pertaining to the said ranch, $65,000. The said services were rendered under an oral employment of plaintiffs by said Wilson, by which plaintiffs were to receive for their commissions, in the first instance, five thousand dollars ($5,000), and all that the property should sell for over two hundred and twenty-five thousand dollars ($225,000). This employment of the plaintiffs was made some time in the summer or fall of 1883, and reiterated and renewed in Chicago about February, 1884. By a subsequent arrangement the defendant agreed to pay plaintiffs the further sum of ten thousand dollars ($10,000). Plaintiffs' services were rendered and negotiations carried on partly by letter, partly by telegram, and partly orally through agents of the plaintiffs in London, England. The time consumed in such correspondence and negotiations it is impossible to state. The same took place at intervals between the time of the first employment and the conclusion of the sale in the spring of 1884. Plaintiff Everett made one trip from Chicago to Denver, in December, 1883, occupying about two weeks, the purpose of which was to confer with the defendant, and settle and adjust the terms of an agreement to be executed by defendant, and to be submitted to the proposed purchaser. Plaintiff Everett and plaintiff Robinson both made another trip to Denver in February, 1884, remaining three weeks, or thereabouts. There were oral negotiations had between plaintiffs and the agents of the purchaser, both in Chicago and in the state of Colorado. These extended over several weeks. The number of hours or days consumed, or the number of hours or days consumed in the negotiations in London, cannot be stated.
"[Signed]                    Wells, Macon & McNeal, Pl'ffs' Att'ys."

An answer was filed to their complaint putting in issue the plaintiffs' right to recover any commission, either fixed or contingent. A trial was duly had, in which plaintiffs asserted a claim for $15,000 for commissions alleged to have been agreed upon, and, in addition thereto, $50,000 as a contingent compensation based on the alleged fact that the ranch and property were so sold as to bring defendant that much in excess of $225,000. To sustain their claim to the $50,000 contingent compensation, the plaintiffs asserted and introduced proof tending to show that the sale under the chattel mortgage was void for the same reasons as are urged in the present case. The proof offered at that trial is preserved in the record now before us,

and it appears upon examination that the entire subject of the chattel mortgage sale was thoroughly exploited. All the facts relating thereto were then comparatively fresh in the minds of the parties, and were fully available to the plaintiffs to support their theory. The sale occurred in 1885; the trial was had in 1887. At that trial the plaintiffs contended, among other things, that the true value of all property purchased by one Green, ostensibly for himself, but really for the defendant, Wilson, should be ascertained, and charged up to Wilson, in order to determine what he actually received for the ranch, and thereby to determine how much the plaintiffs were entitled to as their contingent compensation. The court charged the jury, among other things, to the effect that on the evidence produced there was nothing to impeach the regularity or validity of the sale under the chattel mortgage, and, after instructing the jury on the issues raised by the pleadings relative to the fixed commissions, the court charged, in effect, that, even if there was an agreement by which the plaintiffs were to receive as further compensation any sum in excess of $225,000 which defendant might receive from the English company, there could be no further recovery on that account, because the evidence showed that no sum in excess of that sum had ever been received by Wilson. The jury retired, and brought in a verdict in favor of plaintiffs for $10,000, and were discharged. Subsequently, on the next day, the court, at the request of counsel for the plaintiffs in that action, permitted the jury which had tried the case and been discharged, to be again brought into the box, and permitted plaintiffs' counsel to put the following question to them: "Did you include in your verdict the plaintiffs' claim for any excess over the sum of $225,000, denominated in the evidence 'the surplus profits'?" The former foreman of the jury answered the question thus: "Our understanding is that Wilson never received anything in excess of $225,000." Afterwards final judgment was duly rendered on the verdict in favor of the plaintiffs and against defendant, Wilson, for $10,000. This judgment was reviewed on writ of error by the supreme court of the United States in Wilson v. Everett, 139 U. S. 616, 11 Sup. Ct. 664, 35 L. Ed. 286, where, on page 620, 139 U. S., page 665, 11 Sup. Ct., and page 288, 35 L. Ed., the court says:

"All the instructions complained of in these assignments of error, except the second, involve only the matter of the surplus over $225,000; and, as it clearly appears that that portion of the plaintiffs' claim was disallowed, there could have been no prejudice to the defendant."

The judgment below was accordingly affirmed, with 10 per cent. damages.

From the foregoing it clearly appears that the very claim asserted in this action was sued for in the action at law, deliberately heard on practically the same issues and evidence, and adjudged in favor of the defendant. The complainant in the present action is the representative of Everett and Robinson, who were plaintiffs in the action at law, and seeks to assert their rights against the defendant, Wilson, who was the defendant in the action at law. The action at law therefore was between the same parties, or their privies, as are now

before the court in the present action; was founded upon the same claim or demand which is now asserted, and a final judgment upon the merits was rendered thereon. The judgment in that case constitutes a conclusive estoppel against the prosecution of the present action. By well-settled authority it concludes the parties and their privies "not only as to every matter which was offered and received to sustain or defeat the claim or demand, but as to any other admissible matter which might have been offered for that purpose." Cromwell v. Sac Co., 94 U. S. 351, 352, 24 L. Ed. 195, 197; Board v. Platt, 25 C. C. A. 87, 91, 79 Fed. 567, 571; James v. Iron Co., 46 C. C. A. 476, 496, 107 Fed. 597, 617. It makes no difference that the former action was at law and this in equity. Conceding, for the present purposes, that the facts of this case might entitle complainant to relief in equity, it is undoubtedly true that equity affords only a concurrent remedy. The irregularities or fraud claimed to have vitiated the sale under the chattel mortgage could have all been shown, as they were in fact shown, in the action at law. If established, they would have entitled plaintiffs in that action to ignore the sale which was set up as a barrier to them. Even if an accounting in equity offers a more satisfactory relief than a proceeding at law for the same purpose, a suitor cannot subject a defendant to the expense and trouble attending the defense of an action at law, and, after suffering an adjudication against the right to any accounting, resort to a court of equity to secure the same. Mr. Justice Miller, in discussing the subject of estoppel by judgment in the case of Miles v. Caldwell, 2 Wall. 35, 39, 17 L. Ed. 755, 757, makes use of the following language:

"The second proposition in respect of which complainant asks relief—that the mortgage to Carswell and McClellan is fraudulent, made to hinder creditors—is one of the common grounds of equity jurisdiction. To relieve against fraud and set aside and cancel fraudulent conveyances are among the ordinary duties of courts of chancery. Courts of law, however, have concurrent jurisdiction of questions of fraud when properly raised; and although they cannot cancel or set aside fraudulent instruments of writing; yet, when they are produced in evidence by a party claiming any right under them, their fraudulent character may, under proper circumstances, be shown, and their validity in the particular case contested."

In the case of Blanchard v. Brown, 3 Wall. 245, 18 L. Ed. 69, the supreme court had occasion to consider the effect of an action in ejectment in which the defendant endeavored to impeach the plaintiff's title for fraud, and because the sale, under which plaintiff claimed the title, was vitiated by such irregularities as sacrificed the property. The action which was before the supreme court was a bill in equity, instituted by the defendant after an unfavorable judgment in the ejectment suit, to secure title to the same property upon equitable terms. The court, in passing upon the case (page 249, 3 Wall., and page 71, 18 L. Ed.), makes use of the following language:

"He [defendant] chose rather to risk his whole defense in the impeachment of Brown's [plaintiff's] title for fraud, and because the sale was vitiated by irregularities and the property sacrificed. Having failed before the jury, he is estopped from investigating the same matters in another jurisdiction. He waived his right to have the questions of fraud litigated in the court

of chancery when he presented it as a defense to the action at law, and the defense was legitimate and proper, for such questions of fraud and irregularity as were raised could be disposed of as well at law as in chancery. * * * In fact, the whole record shows that Blanchard claims equitable relief on substantially the same grounds and sustained by the same evidence that he relied on to defeat the action of ejectment. The decision in Miles v. Caldwell is therefore applicable. In that case, as in this, the question of fraud had been submitted to the jury, and determined against the complainant; and this court held that he was barred by the proceedings in ejectment, and could not raise anew in chancery the same questions that were heard at law."

In the case of Foster v. The Richard Busteed, 100 Mass. 409, 1 Am. Rep. 125, the supreme court of that state, in considering the effect of a former judgment as a bar to a later action, says as follows:

"There is no essential difference between the effect of a decree in equity and of a common-law judgment in this respect. A bill regularly dismissed upon the merits, where the matter has been passed upon, and the dismissal is not without prejudice, is a bar to future proceedings, either in equity or at law; and under similar circumstances a judgment at law is a bar to future proceedings in equity."

To the same effect are the following cases: Kendall v. Stokes, 3 How. 87, 11 L. Ed. 506; Thompson v. Roberts, 24 How. 233, 16 L. Ed. 648; Baird v. U. S., 96 U. S. 430, 24 L. Ed. 703; Wilson's Ex'r v. Deen, 121 U. S. 525, 7 Sup. Ct. 1004, 30 L. Ed. 980.

We have carefully considered the cases relied upon by appellant's counsel, and particularly the case of Wiggins Ferry Co. v. Ohio & M. R. Co., 142 U. S. 396, 12 Sup. Ct. 188, 35 L. Ed. 1055, and fail to find anything in them that militates against the principles already announced.

It is argued that defendant never brought suit against the English company to enforce the collection of the balance of the purchase price of the ranch, and therefore that the balance of the uncollected purchase price should have been considered in determining how much defendant received for the ranch. This argument is answered by the suggestion that the English company was organized for the sole purpose of buying the ranch in question, and that upon the failure of that venture necessarily became insolvent. This may or may not be so, but whether the plaintiffs in the action at law presented every fact working in their favor to establish their demand for the contingent compensation claimed by them or not is entirely immaterial. See cases supra. They had their day in court for that purpose, and it was their duty then and there, if ever, to bring forward all facts available in their behalf. If they failed to do so, they cannot now supply their omissions by instituting a new suit for the same demand, and subject the defendant to further cost and expense.

We may not, in the foregoing opinion, have expressly referred to each and all of the points suggested or argued by complainant's counsel, but we have considered them all, and find nothing to disturb the conclusions hereinbefore reached.

The decree of the circuit court dismissing the bill is accordingly affirmed.